## COURT OF APPEALS, JUNE TERM, 1821.

### The State vs. Chase.

ERROR to *Anne Arundel* county court. This was an action of *assumpsit* brought against the state. The declaration contained two counts, one for work and labour, &c. and the other on a *quantum meruit* for work and labour. The general issue was pleaded.

1. At the trial the plaintiff, (now defendant in error,) gave in evidence, that he was, on the 27th of January 1806, appointed and commissioned chief judge of the third judicial district of this state, and that he accepted the said appointment and took upon himself the performance of the duties thereof, after having subscribed a declaration of his belief in the christian religion, and taken the several oaths required by the constitution and laws of this state to be taken by him as chief judge as aforesaid. That he hath continued to hold the said office, under his said commission, and still doth hold the same, using, exercising and performing, all the powers and duties thereof. That at vari-

*A judge is not entitled to compensation for the performance of extra judicial services imposed upon him after the date of his commission*

*Services performed by the chief judge of the third judicial district, as chancellor, under the acts of 1805, ch. 65, s. 19, 1806, ch. 65, s. 2, and 1811, ch. 169, are judicial services.*

*An action would lie against the state, under the act of 1786, ch 53, for all description of claims against the state.*

JUNE 1821.

The State
vs
Chase

ous times, and in various cases, since his appointment and acceptance of the office of chief judge as aforesaid, he hath been called upon, agreeably to the provisions of the act of assembly hereinafter mentioned, as chief judge of the third judicial district aforesaid, and during the recess of the county courts of the said judicial district, to perform and render the several duties required to be performed and rendered by him as chief judge as aforesaid, under and in virtue of the provisions contained in the acts of assembly of 1806, *ch.* 55, and 1811, *ch.* 189, and that he did well and faithfully perform, and render all the said duties, whenever and as often as he was called upon and required so to do. And to prove services to have been rendered by him, under and in virtue of the act of 1806, *ch. 55*, he offered in evidence the bills, papers, and whole proceedings in the court of chancery, in a number of cases; and the certificate of the chancellor in those cases, stating that he could not conscientiously act thereon; and also read in evidence the several orders and decrees passed by him in the said suits under and in virtue of the said act of assembly, the complainants therein having made their election as stated in the said act of assembly. He also offered in evidence sundry cases depending in the court of chancery, wherein the chancellor requested him to give his opinion upon questions of law arising thereon; and that accordingly, and in virtue of the act of assembly of 1811, *ch.* 189, he did give an opinion on the said questions, which opinions were read in evidence to the jury; and he proved all the services set forth above to have been rendered by him subsequently to his appointment as chief judge as aforesaid, and to the passage of the laws under which he grounds his claim to be compensated for them. He also offered in evidence the proceedings of the house of delegates upon a memorial preferred by him to the general assembly in the year 1807, allowing, by a resolution passed that house, the sum of $200 to the chief judge of the third judicial district, as a compensation for his services performed under the act of 1806, *ch.* 55.

The state then, by its counsel, offered in evidence, that the plaintiff held the office of chief judge of the third judicial district, from the 27th of January 1806, until a period subsequent to the institution of this suit, under an annual salary of $2200. That from the time of his appoint-

ment to the office of chief judge, until after the bringing of the present action, he regularly received, as it became due, the salary of \$2200, so allowed him by law. The state also offered in evidence the proceedings of the senate in the year 1807, negativing the resolution which passed the house of delegates as herein before referred to; and the proceedings of the house of delegates at December session 1818, negativing the resolution proposing to allow the chief judge, as a compensation for his services performed under the act of 1806, ch. 55, one year's additional salary. The plaintiff then prayed the court to instruct the jury, that upon the above statement of facts, if the jury find the same to be true, he is entitled to recover. Which instruction the court, [*Ridgely* and *Kilgour*, A. J.] gave to the jury, being of opinion, that an implied *assumpsit* was created on the part of the state, that the plaintiff should be paid and satisfied for the services above stated to have been performed, if proved to the satisfaction of the jury; and that it was the province of the jury to determine the amount of such compensation. The state, by its attorney, excepted.

2. The state, by its counsel, then prayed the opinion of the court, and their direction to the jury, that the plaintiff having held the office of chief judge of the third judicial district from the time of his appointment on the 27th of January 1806, until after the institution of this suit, under an annual salary of \$2200, which he admits to have been regularly paid to him, is not entitled in law to any additional compensation from the state; and that the services, of which evidence has been offered, constitute no consideration from which an *assumpsit* on the part of the state can be implied; and that therefore he is not entitled to recover in this action. Which opinion and direction the court refused to give. The state, by its counsel, excepted.

3. The state, by its counsel, also prayed the opinion of the court, and their direction to the jury, that as the act of 1805, ch. 65, which passed prior to the plaintiff's appointment as chief judge of the third judicial district, and under which he holds his commission, required him to hear and determine all cases in which the chancellor might be interested; and the case of *Kilty* and *Simmons* against *Lane* and others, and *Kilty* against the heirs of *Brown*,

were cases of that description, the plaintiff was bound to hear and determine them without being entitled to any allowance therefor in addition to his annual salary as chief judge of the third judicial district; and that the services rendered in hearing and determining those cases, constitute no consideration from which an *assumpsit* on the part of the state can be implied, and that consequently the plaintiff is not entitled to recover any compensation therefor, although the chancellor had certified to the said chief judge that he could not conscientiously act thereon. Which opinion and direction the court refused to give. The state, by its counsel, excepted. Verdict for the plaintiff for $3000 current money damages. Upon which a judgment was rendered for the plaintiff; and on which judgment the state brought a writ of error, returnable to this court.

The cause was argued before BUCHANAN, EARLE, JOHNSON, MARTIN, and DORSEY, J.

*Williams,* (Assistant Attorney-General,) *Pinkney,* and *Ridout,* (District Attorney,) for the state, contended—1. That no action could be maintained against the state, in cases of this description, under the act of 1786, *ch.* 53, which act, they contended, authorised suits against the state only where claims against the state could not be settled and adjusted with the auditor general, by reason of a disagreement between the claimant and the auditor, as to the sum to be allowed. They referred to the preamble of that act, and also to the resolutions of February 1777, No. 1, March 1778, No. 1, and 1790, No. 8, defining the powers and duties of the auditor general.

2. That the legislature had a right to impose new and additional duties and services of a judicial nature upon the courts and judges after their appointment; that it had a right to repeal, modify, or change the law of the land, whether the burthens of the courts or judges were lessened, added to, or varied, or not; and this in regard to all the objects of the law, criminal, common law or equity law. They referred to the *Decl. of Rights,* 3d *sect. Const.* 10th and 11th *sect.*

3. That the duties enjoined upon the chief judge of the third judicial district, or upon the county courts of that district, by the acts of 1806, *ch.* 55, and 1811, *ch.* 189, *being judicial powers,* could rightfully be imposed upon

the judges or courts of the several districts. They refer-
red to the acts of 1723, *ch.* 12; 1774, *ch.* 28; 1763, *ch* 28,
*s.* 5; 1785, *ch.* 49; 1791, *ch.* 78; 1792, *ch.* 63; 1814, *ch.*
55; 1814, *ch.* 94, and 1816, *ch.* 193, *s.* 16. *Whetcroft
vs. Dorsey,* 3 *Harr. & M'Hen.* 357. *Johnson vs. The
State, Ibid* 223. *Hayburn's case,* 2 *Dall. Rep.* 409.

4. That the legislature might impose local and *peculiar
judicial* duties upon any particular court, or a particular
judge of any court. They referred to the several acts of
assembly requiring the county courts, bordering upon the
*Potomac,* to take cognizance of abuses practised upon the
navigation of that river; the county courts bordering upon
the *Susquehanna* to take cognizance of encroachments up-
on the fisheries, &c. and of *Baltimore* county court, in a
peculiar manner, administering the ordinances of the city
of *Baltimore;* also the acts of 1796, *ch.* 68, *s.* 9; 1813,
*ch.* 126, *s.* 2; 1814, *ch.* 94, *s.* 3; 1815, *ch.* 215, *s.* 2; 1816,
*ch.* 151, *s.* 1, and 1817, *ch.* 148, *s.* 6, 10.

5. That no services, especially judicial, which the le-
gislature could rightfully exact of any court or judge, a
permanent salary being established for the judges, could
lay the foundation of an implied *assumpsit* on the part of
the state, that any other or further compensation should be,
or ought in law to be paid. They referred to the *Decl. of
Rights,* 30th *sect.* and the act of 1805, *ch.* 86.

6. That, supposing there were no other objections, there
was nothing in the nature of the duties, or of the burthen-
someness of the services, or of any other circumstances
connected with this controversy, which entitled the de-
fendant in error to expect or demand additional compensa-
tion. They referred to the act of November 1779, *ch.* 24,
*s.* 4, where duties similar to those imposed by the act of
1805 *ch.* 55, *s.* 1, were cast on the general court, which
law was acted under in *Quynn vs. Staines,* 3 *Harr. and
M'Hen.* 128; and opinions given by that court, when re-
quested by the chancellor, as in *Ridgely vs. M'Laughlin,*
3 *Harr. and M'Hen.* 220. *Russell and Lux vs. Falls, Ibid*
457. *Ridgely vs. Howard, Ibid* 321. *Cheston vs. Page,* 4
*Harr. and M'Hen.* 471. *Land Hold. Ass.* 384, 403. *Clarke
vs. Ray,* 1 *Harr. and Johns.* 318. *Manro vs. Gittings and
Smith, Ibid* 492. *Lowe vs. Maccubbin, Ibid* 550. They al-
so referred to *Chandler vs. The State,* (ante 284.)

7. That under the *third* bill of exceptions, the services, alleged to be performed by the defendant in error, were under the act of 1805, *ch.* 65, *s.* 19, which passed *prior* to his appointment, and consequently he accepted the office with a knowledge, and therefore the implied assent, that he would be called upon to perform those duties.

*Magruder, T. B. Dorsey* and *Marriott*, for the defendant in error, contended—1. That under the act of 1786, *ch.* 53, this action might be sustained against the state, that act, they contended, was general, giving the right to all descriptions of persons to proceed under it. They referred to 19 *Vin. Ab.* tit. *Statute*, 519, 520, 522, 528, as to the rules to be observed in the construction of statutes. The act of 1786, *ch.* 49, *s.* 4. And to show that under the act of 1786, *ch.* 53, similar suits had been brought against the state, they referred to *Nicholson vs. The State*, 3 *Harr.* and *M'Hen.* 109. *Tschudy vs. The State*, 3 *Harr.* and *M'Hen.* 1. *Dugan vs. The State*, in 1790. *Dorsey vs. The State*, 4 *Harr.* and *M'Hen.* 165. *Clarke vs. The State*, in 1788. *Chase vs. The State*, in 1810. *Green vs. The State*, in 1810; and the act of 1799, *ch.* 79, *s.* 7.

2. That the acts of 1806, *ch.* 55, and 1811, *ch.* 189, imposed duties on the defendant in error which were not imposed on any other judge, and which he was not bound to perform, having been imposed after his appointment; but that having performed them, he was entitled to be compensated therefor. They cited *Chandler vs. The State*, per *Johnson*, J.

3. That it was not contended that the defendant in error could claim compensation for any services performed by him under the act of 1805.

Buchanan, J. delivered the opinion of the court. By the act of 1805, *ch.* 65, *s.* 19, it is enacted, "that in all cases where the chancellor is or may be interested, and where bills in chancery may properly lie, the chief judge of the district, in which the chancery court shall sit, shall hear, determine, order and decree thereon, in the same manner as if such chief judge was the chancellor; and an appeal may lie in such cases, from the decree of the judge to the court of appeals," &c.

The act of 1806, *ch.* 55, *s.* 1, directs, "that in any suit in the chancery court, in which the chancellor for the time

being may have been counsel, or have given his opinion, and on that account may conceive that he cannot conscientiously act thereon, and shall so certify in writing, the same shall be heard and determined by the chief judge of the third judicial district, or by the court thereof, at the election of the complainant, and all interlocutory, and other orders, in such cases, shall be made by the said chief judge, which determinations and orders shall have the same effect, as if made by the chancellor, and such decree shall be subject to appeal in like manner."

The *second* section of the same act authorises the chancellor to require the opinion of the chief judge of the third judicial district, on any question of law which may arise in any suit in chancery, and in which, according to the usual practice, such opinion may be thought necessary; and declares it to be the duty of the said judge, to express in writing such opinion. And the act of 1811, *ch.* 189, gives to respondents, the same benefits and advantages that are given to complainants by the *first* section of the act of 1806, *ch.* 55.

From the facts set out in the first bill of exceptions, it appears that the defendant in error was appointed chief judge of the third judicial district, on the 27th day of January in the year 1806, and has ever since held the office, and acted as such; and that after his appointment, and entering upon the duties of his office, and during the recess of the courts, he performed sundry duties, in passing orders and decrees, and giving opinions, under and in virtue of the provisions of the several acts of 1805, *ch.* 65, *s.* 19, 1806, *ch.* 55, *s.* 1, 2, and 1811, *ch.* 189, to recover a compensation for which this suit was brought.

It is contended, on the part of the state—1. That no action can be maintained against the state, in cases of this description, under the authority of the act of 1786, *ch.* 53, by which the state is rendered liable to be sued at the instance of individuals; and 2. That the services rendered by the defendant in error, furnish no consideration from which an assumpsit on the part of the state can be implied.

We have given to this case the attention that it merits, and think there is nothing in the first objection. The act of 1786 has so long, and so often been practiced upon, that it is not now thought to be open to construction. But on full consideration we are of opinion, that the second

JUNE 1821.

The State
vs
Chase

objection is fatal, and that there is error in the opinion of the court below on each of the bills of exceptions.

We hold it to be perfectly clear, that the legislature may rightfully and constitutionally, impose upon the judges any new and additional judicial duties, which the varying circumstances of the state may require; or which, suggested by experience, may in their judgment be deemed necessary to the due administration of justice.

Such a right is inseparable from the genius of our institutions, and from the very nature of things it must be so; if it were otherwise, courts of justice would answer but half the purposes of their institution; and all judges are supposed to accept their appointments, with a knowledge, and tacit consent, that their labours may from time to time be increased or diminished; according to public exigency—seldom diminished to be sure, though sometimes increased with no very sparing hand.

New judicial duties may often be unnecessarily imposed, and services, not of a judicial nature, may sometimes be required. In the latter case, a judge is under no legal obligation to perform them. But in the case before us, the duties imposed upon the defendant in error, by the acts of 1805, *ch.* 65, *s.* 19, 1806, *ch.* 55, *s.* 1, 2, and 1811, *ch.* 189, were of neither of those descriptions, but were strictly of a judicial character, and required to be performed by him in his judicial capacity, with an appeal from his decree; and were necessary to be imposed on some judge or tribunal, other than the court of chancery, owing to the peculiar situation of the cases intended to be provided for.

They are stated in the exceptions to have been performed by the defendant in error as chief judge of the third judicial district, and are so charged in the account filed by him, and sent with a short note to the attorney general, as directed by the act of 1786, *ch.* 53, nor could they have been performed in any other character.

Considered, then, as judicial services, rendered by a judge, (who is a salary officer,) in his judicial capacity, we think, that he has no legal claim to a compensation for them, (recoverable in a court of justice,) beyond the salary that is fixed by law, and which it is admitted has been regularly paid.

By the thirtieth article of the declaration of rights, it is provided, "that salaries liberal, but not profuse, ought to be secured to the chancellor, and the judges, during the continuance of their commissions, in such manner, and at such time, as the legislature shall hereafter direct, upon consideration of the circumstances of this state."—Hence the compensation claimed, is obviously that, which *as a salary*, does not fall within the province of a jury, or any other tribunal but the legislature to ascertain, the subject of salaries, being exclusively, and for wise purposes, entrusted to the legislature alone; and as a compensation over and above his salary, for services rendered in his official capacity, is not recoverable in an action of assumpsit by a salary officer, as settled in the case of *Chandler vs. The State, (ante* 284.)

By the act of 1805, *ch.* 86, *s.* 2, the salaries of the chief judges of the several districts are fixed at $2200 per annum, to be paid quarterly—and by the *third* section it is enacted, "that the said judges shall receive no other or further compensation than what is allowed in this act." How then, can the services rendered by the defendant in error, furnish any foundation, in the absence of any other act of legislation on the subject, from which an assumpsit on the part of the state can be implied, when that law expressly interdicts any other compensation than the salary allowed? The law is consistent, and will not raise an implied assumpsit against its own inhibition, which operates as an exclusion of an implied contract.

It is not deemed material under which of the acts the services of the defendant in error were rendered. The act of 1805, *ch.* 65, which imposes certain duties on the chief judge of the district, in which the chancery court might sit, was passed before he received his appointment, and when he accepted his commission, he took it *cum onere;* for any services, therefore, done under that act, he would, on no principle, be entitled to recover a compensation in a court of law; and his claim for services rendered under the acts of 1806, *ch.* 55, and 1811, *ch.* 189, is subject to the objections before stated.

In this view of the case, we think, that the defendant in error is without redress in a court of law, and can only

June 1821.   obtain remuneration at the hands of the legislature, and
             are therefore constrained to reverse the judgment.