## WALTER McCREA *vs.* CHARLES B. ROBERTS, A JUDGE OF THE CIRCUIT COURT FOR CARROLL COUNTY.

*Constitutional Law—Mandamus—Exercise of Judicial Power—License to Sell Liquor.*

When a matter is confided to the discretion or judgment of a tribunal
or an official, no writ of *mandamus* lies to control the exercise of
that discretion or to reverse a decision made in pursuance of it.

The Act of 1894, ch. 6, regulating the sale of liquor in Carroll
County, provides that the applicant for a license shall file with the
Clerk of the Circuit Court a certificate signed by at least nine reputable
free-holders, *bona fide* residents of the neighborhood in which
the business is to be carried on, stating their places of residence,
their acquaintance with the applicant, his fitness for the exercise of
the privilege, etc.   It is also provided that if any objection be filed
to the issue of the license applied for, the Clerk of the Court shall
present the application and the objection to a Judge of the Circuit
Court, who shall proceed to hear and determine the question as to
whether the license applied for shall be issued or not, after giving
notice to the applicant and the objectors.   *Held*, that this Act is
not unconstitutional, as requiring the performance by a Judge of a
duty not judicial in its nature, but that in determining whether the
applicant is entitled under the statute to a license, it was necessary
for the Judge to whom the matter was referred by the Clerk, to decide
whether the signers of the certificate were free-holders or not; whether
they were reputable or otherwise; whether they were residents of

the neighborhood, and what w?s to be considered the neighborhood, and that in so deciding, the Judge performed a duty judicial in its nature, and his determination cannot be reviewed by *mandamus.*

Appeal from an order of the Circuit Court for Carroll County (JONES, J.), overrulling demurrer to defendant's answer and dismissing the petition for *mandamus.*

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE and SCHMUCKER, JJ.

*James A. C. Bond* and *Francis Neal Parke,* for the appellant.

The Act of 1896, ch. 6, sec. 7, provides for the manner of procedure when one of the Judges of the Circuit Court for Carroll County is called by the Clerk from the discharge of his legitimate judicial duties to perform this *administrative* function. Is the question committed to him to be determined according to his personal opinions or his private judgment? *Not at all.* On the contrary, he is to give reasonable notice to the parties to appear before him and is *to hear* and *determine,* not whether, according to his own individual views on the subject, the license should issue or not, as then a hearing would be *an absurdity* and a contradiction of terms, but whether the CAUSE shown by the objectors in writing is sufficient to defeat the application for license. The Judge selected by the Clerk is, accordingly, limited to the consideration of the CAUSE, shown to him at the hearing, why the license should issue or not issue. What is CAUSE under the statute becomes, therefore, not a question of *discretion,* but *a question of law.* The idea of any unlimited or *personal* discretion in the Judge, acting under the provisions of chapter 6, is wholly repugnant to the purpose of the Legislature. This is most strongly presented by the fact that chapter 6, Laws of 1894, omits some of the most important restrictions as to the proper parties to be entrusted with the sale of liquor under the former Act in force in Carroll County, chapter 423, Laws of 1892. GOODNOW says: "Again, the Courts hold that where a statute provides

that an officer may be removed from office for cause only, they have the right to control the discretion of the removing officer in deciding *what is cause.* The Courts, it is true, do not ground their decisions on any desire to control the discretion of administrative officers, but on the proposition that the question, *what is cause, is not a question of discretion, but a question of law."* *Comparative Administrative Law,* vol II, p. 206, and cases cited thereunder. *Miles* v. *Stevenson,* 80 Md. 358, 366; 5 *Am. & Eng. Ency. of Law* (2nd ed.) n. pp. 774–5. The cases of *State ex rel. O'Neill* v. *Register et al.,* 59 Md. 283, and *Devin* v. *Belt,* 70 Md. 352, are not in conflict with the principle just stated, as in neither case was *any cause* required to be shown or *any hearing* provided, but the whole matter rested in the exercise of the personal judgment of the respondent. (80 Md. 366).

In determining what is *cause,* the investigation must be confined within the four corners of chapter 6. As CHIEF JUDGE McSHERRY said in *Miles* v. *Stevenson, supra,* " In this case at bar the *cause* alleged was not one of those set forth in the statute and for that reason the County Commissioners' act in removing the relator was a nullity." In the case of *In re Prospect Brewing Company* (Pa.) 17 Atl. Rep. 1090, where the statute required the applicant to be a citizen of the United States, of temperate habits and of good moral character, the Court said the discretion of the lower Court was confined to *these questions* and that " the Act of 24th May, 1887, does not confer upon the Court of Quarter Sessions the power of a roving commission to inquire as to matters not properly before the Court, and in no way connected with the petitioner's right to a brewer's license." See *In re Pollard,* 127 Pa. St. 507.

Where no legal cause why the license should not issue was shown, there could be no exercise of discretion and the appellee brought himself within the principle that *mandamus* will lie " to correct abuses of discretion when it has been made clearly to appear that the official refusing to do

the act has either not exercised his discretion or has wilfully chosen to act in manifest disregard of duty and the legal merits of individuals." *Extraordinary Relief, Spelling*, sec. 1384; *Merrill on Mandamus*, secs. 38, 39, 40, 41, 188, 195; *High's Entraordinary Relief* (3rd. ed.) secs., 327, 218; *Black on Intox. Liq.*, sec. 172; *11 Am. & Eng. Ency. of Law*, 663 and notes; *Miles* v. *Stevenson*, 80 Md. 365; *In re Prospect Brewing Co.*, 127 Pa. St. 523; *In re Sparrow* (Pa.), 20 Atl. Rep. 692; *In re Johnson*, 156 Pa. St. 322; *Appeal of Kelminski*, 164 Pa. St. 231; *Zanone* v. *Mound City*, 103, Ill. 553; *State of Florida* v. *Kirke*, 12 Florida, 278; *Ex parte Bradley*, 7 Wallace, 376.

The authorities cited above conclusively show that upon the petition the appellant is entitled to the writ of *mandamus*, unless the answer sets up *some legally sufficient bar*. But the answer sets up no facts whatever and is silent as to the reasons why the appellee refused the license and relies upon the statement that, *having heard and determined a question resting in the exercise of discretion, the writ will not lie to control or review that discretion*. The vice of this answer is that it does not meet the gravamen of the petition, which is, that *no discretion* could have been possibly exercised by the appellee, inasmuch as the petition discloses there could be no discretion exercised in passing upon the legal sufficiency of the papers and proceedings, as they were shown to be perfect; nor in deciding as to whether the appellant was a proper person to have license, as that the appellee *admitted* and the objectors did not deny it; nor in considering any question of evidence, as there was *no disputed fact*. Every principle of pleading requires the answer to meet the substance of the petition, *but here the answer not only avoids it, but has no relevancy to the case made by the sworn petition*. The law is that the answer must be full, certain and definite and must neither be evasive nor argumentative. *Legg et al.* v. *Mayor, etc., of Annapolis*, 42 Md. 203, 222; *Harwood* v. *Marshall*, 10 Md. 451, 464; *Creager* v. *Hooper*, 85 Md.

490, 502; *Merrill on Man.*, section 274; *High's Extraor. Rel.*, secs 467, 472; 2 *Dillon on Mun. Corp.*, sec. 876.

Will the Court then say that the plea of discretion shall furnish a refuge for the appellee when the appellee had *no discretion?* Will the Court say that the course of the administration of law and the application of its remedies is to be arrested by an answer admitting the facts that entitle the appellee to relief? To say this is to proclaim to the appellant the barren announcement—" You have a right to your remedy of *mandamus*, but no means of securing it." The Courts say that they will review the *arbitrary action of judicial officers and compel them to discharge their duties by mandamus.* How can they do so if they recognize in such cases the sufficiency of an answer merely stating that discretion has been exercised ; and if they say that, no statement as to *how* discretion was used can be required ? In a liquor license case (*In re Prospect Brewing Co.*, *supra*), the Court said: " *If the record does not disclose the reason for the refusal*, it would be impossible to review the action of the Court below, either upon a writ of *certiorari* or other process, no matter how illegal or arbitrary the action of the Court might be, or how vast the interests thus stricken down. As to such matters a Quarter Sessions Judge would sit as absolute a despot as the Emperor of China. " *Merrill on Man.*, secs. 274–5 ; *High's Extraor. Rel.*, secs. 467, 472 ; and cases *supra.*

The questions in regard to the constitutionality of the Act are : (A.) Whether or not the appellee, Chief Judge of the Fifth Judicial Circuit, performed a duty pertaining to his office in deciding, after he had been selected for that purpose from his associates by the Clerk of his Court, that a license should not be granted to the appellant ? (B.) And, if not, whether the appellee could constitutionally perform such a duty ?

(A.) The answer to the first is found in the opinion of CHIEF JUSTICE TANEY in the case of *U. S.* v. *Ferreira*, 13 How. 47. In that case Congress passed an Act designating

the Judges of the Federal Courts of Florida to adjust claims against the U. S. growing out of a treaty with Spain.    He says, " It is too evident for argument on the subject that such a tribunal is not a judicial one and that the Act of Congress did not intend to make it.    The authority conferred on the respective Judges was nothing more than that of a commissioner to adjust certain claims against the U. S. and the office of Judges and their respective jurisdictions are referred to in the law merely as designation of the persons to whom the authority is confided, and the territorial limits to which it extends.    The decision is not a judgment of a Court of Justice."    In like manner this Act simply designates the three Judges of the Circuit Court for Carroll County as the class from which the Clerk of their Court is to choose one to administer an act, the object of which is to regulate the sale and granting of licenses to sell spirituous or fermented liquors in Carroll County.    The Act has the two-fold object of limiting the sale of liquor to those fit to be entrusted with it and of increasing the revenue from licenses, and places upon the Judge selected the usual duties of excise commissioners or a liquor license board. Are these the duties of a Court and properly within the sphere of its action?    If so, what is the difference between an administrative officer and the judiciary? and which is invading the domains of the other? If the Legislature were to enact that in case a public road be asked to be opened in Carroll County and objection be made thereto, or that there be a disputed assessment of property for taxation, the County Commissioners should refer the matter to " *a* Judge of the Circuit Court to hear and determine," would the Court hold this a judicial duty? The concluding part of the opinion in the case of *Goldsborough* v. *Lloyd*, 86 Md. 374, is prophetic of the Court's answer.    *Houseman* v. *Kent*, 58 Mich. 364 ; *Auditor, etc.* v. *Atchison, Topeka and Santa Fe R. R. Co.*, 7 Am. Rep. 575 ; *Case of Supervisors of Election*, 113 Mass. 247; 19 Am. Rep. 341; *In re Cleveland*, 51 N. J. L. 311.

Any officer or tribunal may be created to discharge duties involving the determination of facts, but the officer or tribunal would not therefore be a judicial one. If this were so, the distinction between executive and judicial power would vanish, for many executive or administrative officers, like the appellee herein, have to decide questions of fact in the discharge of their duties. Again, the Judge or Judges of a Court constitute the legal entity, a Court, and judicial acts are the acts of that Court so constituted. The powers and acts of the Judge or Judges, within the limits of his or their authority, are the powers and acts of the Court. If, therefore, the act or power is not the act or power of the Court, then the act or power is not a judicial one, as it could not have been done or exercised in the performance of a duty properly pertaining to the function of a Judge, *qua* Judge. Consequently, a duty can not be said to be judicial when the power to discharge it does not *primarily rest alike upon all the members of the Court.* The test of whether an act or duty is judicial is found in the answer to the question, is the act or duty that of the Court? If not, then the appellee was acting as a separate and independent tribunal. (See *Anderson* v. *Levely*, 58 Md. 192). Applying this test to the Act of 1894, the duty cast upon the Judge selected must be said to be non-judicial, for it cannot be performed by the three Judges, by two Judges, nor even by one Judge until he has been selected by the Clerk to act, nor can it be performed by the Judges or any one of them acting as a Court. The jurisdiction of the appellee was not by reason of his being a member of the Circuit Court for Carroll County nor by virtue of any direct authorization of the Act, but in consequence of his selection by the Clerk, as it was not until then that he was empowered to act, but, when so selected, his jurisdiction was exclusive.

(B.) Having seen that the duty imposed by the statute is non-judicial, we pass to the question of the constitutionality of this provision of the Act. Can the Legislature of Maryland impose upon the appellee, a Judge of the Circuit

Court for Carroll County and of the Court of Appeals of
Maryland, non-judicial duties, and can he constitutionally
assume them when selected by the Clerk of the Court? We
deny that the Legislature can impose and that the appellee
can discharge non-judicial duties.    The first case to engage
the attention of the Supreme Court in regard to the appli-
cation of the theory of the separation of governmental pow-
ers into the legislative, executive and judicial under the
Constitution was the *Hayburn case,* 2 Dallas, where the
Court decides " That neither the legislative nor the execu-
tive branches can constitutionally assign to the judicial any
duties except as are *properly judicial* and to be *performed
in a judicial manner."*    The case of appeal of *Norwalk St.
Ry. Co. (Conn.),* 37 Atl. Rep. 1080, discusses this question
with a fullness and searching examination scarcely equaled
by any Court in the country.

*William H. Thomas* and *Chas. T. Reifsnider, Jr.,* for the
appellee.

This case is obviously within the rule, that where the
duty is one which necessarily requires the exercise of judg-
ment and discretion, a *mandamus* will not lie to control or
reverse the decision of one to whom the discharge of said duty
is confided, which rule is too well established in this State and
elsewhere to be disputed.    And since the case of *Wailes* v.
*Smith, Comptroller,* 76 Md. 469, we are not without a test
as to what constitutes a *ministerial duty,* as distinguished
from a *discretionary duty.*    For, as says the Court in that
case, " where the duty is such as necessarily requires the
examination of evidence and the decision of questions of
law and fact, such a duty is not ministerial, and not being
ministerial, the decision of a public officer to whom the dis-
charge of such a duty has been confided cannot be reviewed
or reversed in a *mandamus* proceeding."    Where the officer
or tribunal has jurisdiction of the matter submitted for his or
its decision a *mandamus* will not lie to control, review or
reverse his or its decision.    *Green* v. *Purnell, Comptroller,*

12 Md. 329; *Miles* v. *Bradford, Governor,* 22 Md. 171; *Shober* v. *Cochrane,* 53 Md. 544; *O'Neill* v. *Register et al.,* 59 Md. 288; *Georges Creek Coal & Iron Co.* v. *County Commissioners of Allegany County,* 59 Md. 259; *Devin* v. *Belt, Clerk,* 70 Md. 352; *Wailes* v. *Smith, Comptroller,* 76 Md. 469; *Goldsborough* v. *Lloyd,* 86 Md. 374; *Ex Parte Railway Co.,* 101 U. S. 711; *Ex Parte Burtis,* 103 U. S. 392; *Ex Parte Newman,* 81 U. S. 877.

The above cases are to be distinguished from the cases in which the tribunal or Court arbitrarily exceeded its jurisdiction. *Miles et al.* v. *Stevenson,* 80 Md. 358; *Ex Parte Virginia,* 100 U. S. 667; *Ex Parte Bradley,* 74 U. S. 214. And the cases in which the tribunal refuses to exercise the judgment and discretion required to be exercised by it, and arbitrarily and fraudulently disposes of the matter submitted for its decision. *State* v. *Rickards,* 50 Am. St. Rep. 476.

The answer alleges that a hearing was had, at which both parties were represented by counsel and numerous witnesses were examined, and that after a careful consideration of the law and the evidence the appellee determined to dismiss the application for license. The demurrer admits the facts alleged in the answer. The appellee contends in the last paragraph of his answer that the other Judges of the Circuit Court for Carroll County cannot review or reverse his decision in a *mandamus* proceeding. It certainly was not contemplated by the framers of our Constitution that any two Judges of the Circuit Court should control the judgment or conscience of the other Judge. The application and objections having been presented to the appellee, it became his duty to determine whether the license should be issued or not. Having determined the matter according to his judgment and conscience he certainly cannot be compelled to reach a different conclusion. *Goldsborough* v. *Lloyd,* 86 Md. 374; 12 *Am. & Eng. Ency. of Law,* 10; *Fisher* v. *Hepburn,* 48 N. Y. 41; *People* v. *National Trust Co.,* 31 Hun. (N. Y.) 20.

BRISCOE, J., delivered the opinion of the Court.

The appeal in this case is from an order of the Circuit Court for Carroll County refusing a *mandamus* and dismissing the petitioner's application therefor. A brief statement of the facts will be necessary for a clear understanding of the case.

The Act of 1894, ch. 6, regulates the sale of liquor in Carroll County. By section 4 of that Act, it is provided that any person desiring to obtain a license to sell liquor shall file an application in writing with the Clerk of the Circuit Court for that county, in which he shall state his name, place where the business is to be carried on, the kind of license desired, &c., &c. Section 5 of the Act enacts : "That there shall be annexed to said application a certificate signed by at least nine reputable freeholders, *bona fide* residents of the neighborhood in which the applicant proposes to conduct the business under the license applied for, in which each of the persons certifying shall state his residence or place of business ; that he is over twenty-five years of age ; how long he has known the applicant ; that he believes the statements made in the application to be true ; that from his knowledge of the applicant or applicants and his acquaintance with him or them, he believes the applicant to be a proper person or the applicants to be proper persons to have the privilege of selling spirituous or fermented liquors, and he accordingly recommends the issuance of the license applied for."

Section 6 of the Act provides : "That upon the filing of such application and certificate, the applicant shall pay to the Clerk with whom the same are filed, the sum of two dollars, to be applied to paying the expense of advertising, as hereinafter provided for, and thereupon said Clerk shall insert in two successive issues in some weekly newspaper published in said county, prior to the fifteenth day of the month, preceding the month for which the license is to begin, a notice that such application has been filed, specifying the kind of license applied for, and the place where the

business is to be conducted, and stating that unless cause be shown to the contrary in writing, on or before the aforesaid fifteenth day of the month preceding the month with which the license is to begin, the license applied for will be issued, provided the applicant complies with the requirements of this law requisite thereto, as hereinafter provided."

Section 7 further provides: " That if any person shall file with said Clerk, in writing, within the time specified, any reason why the license applied for should not be granted, such Clerk shall forthwith present the application and certificate and the objection to a Judge of the Circuit Court for said county, and such Judge shall proceed to hear and determine the question as to whether the license applied for shall be issued or not, after giving such notice to the applicant and objector, as such Judge shall deem reasonable, and shall award the cost of such hearing, as such Judge shall deem equitable and just."

On the 25th of October, 1898, the appellant, Walter McCrea, filed an application under this law, in proper form, for a license to sell liquor in Gamber, Carroll County, with a certificate signed by eleven persons, who alleged themselves to be reputable freeholders, of whom six stated that they resided in Gamber and five stated that they resided a mile or more therefrom.

Shortly afterwards an objection was filed to the issue of the license, which was signed by forty-nine persons, who alleged themselves to be residents of and adjacent to the village of Gamber. The objection stated two reasons why the license should not be issued : First. Because the certificate to the application is not signed by nine reputable freeholders, *bona fide* residents of the neighborhood in which the appellant proposes to conduct the business under the license applied for. Secondly. Because the application is not certified to by persons who appear to be sufficiently acquainted with him to know his character as a fit person to sell spirituous and fermented liquors.

This application and the objection were presented by the

Clerk of the Circuit Court to HON. CHARLES B. ROBERTS, Chief Judge of the Circuit Court for Carroll County, who set the case for hearing before him.   At the hearing, the appellant and the objectors were represented by counsel and witnesses were examined.   An order was subsequently passed dismissing the application.   The appellant thereupon filed in the Circuit Court for Carroll County a petition alleging in substance that he had complied with all the requirements of the law and had proved the fact of such compliance at the hearing of the objection to his application and that he was entitled to have a license issued to him. The prayer of the petition was, " that a writ of *mandamus* might be issued directed to JUDGE ROBERTS, a Judge of the Circuit Court for Carroll County, commanding him to pass an order rescinding and annulling the order passed by him on the 8th day of October, 1898, dismissing the application for a license to sell spirituous and fermented liquors and authorizing and directing that the application of McCrea," * * * be granted by the Clerk of the Circuit Court. And it is from an order overruling a demurrer to defendant's answer and dismissing the petition that this appeal has been taken.

It is the settled law of this Court, that one Judge of a Circuit has no jurisdiction to issue a writ of *mandamus* against the other Judges of the Circuit, to compel him or them to do an act which the others are authorized to do themselves.   *Goldsborough* v. *Lloyd*, 86 Md. 376.   But it is urged by the petitioner that since he proved at the hearing that he had complied with the statute and did possess the requisite qualifications, there was no legal ground upon which a license could have been refused, and that the order dismissing his application was consequently not passed in the exercise of a discretion and can be reversed under those proceedings.

It is quite true that in cases where a tribunal refuses to exercise the judgment and discretion imposed by a statute, or arbitrarily exceeds its jurisdiction, a *mandamus* will lie·

*Miles et al.* v. *Stevenson*, 80 Md. 358. This case does not, however, fall within the rule applicable to those cases. The answer of the respondent states, " that he fully discharged his duty and exercised the judgment and discretion required to be exercised by him by the Act, and after a full hearing, a careful consideration of the law and evidence, he dismissed the petition." And the demurrer to the answer admits these facts.

In the recent case of *Wailes* v. *Smith, Comptroller,* 76 Md. 469, this Court said, where the duty is such as necessarily requires the examination of evidence and the decision of questions of law and fact, such a duty is not ministerial, and not being ministerial, the decision of a public officer to whom the discharge of such a duty has been confided cannot be reviewed or reversed in a *mandamus* proceeding. *In Ex Parte Burtis*, 103 U. S. 238, the Supreme Court thus states the rule : " A writ of *mandamus* may be used to compel an inferior tribunal to act on a matter within its jurisdiction, but not to control its discretion while acting, or to reverse its decision when made. Both of these rules are elementary and are fatal to this application. The District Judge took jurisdiction of the matter as it was his duty to do, heard the parties and decided adversely to the claim of the petitioner. In this he may have done wrong, and the reasons he has assigned may not be such as will bear the test of judicial criticism ; but we cannot, by *mandamus*, compel him to undo what he has thus done in the exercise of his legitimate jurisdiction."

We come, then, to the main contention in the case, and that is, the validity of the Act of 1894, ch. 6.

It is urged by the appellant that this Act is unconstitutional, because the issuing of licenses to sell liquor is a purely executive or administrative function, and to impose this duty upon a Judge is to require him to perform a non-judicial duty, contrary to the constitutional provision that requires the legislative, executive and judicial powers shall be kept separate and distinct.

In the Constitution of 1776, the Bill of Rights, section 6, declared that the legislative, executive and judicial powers of the Government ought to be forever separate and distinct from each other. Art. 8 of our present Bill of Rights adds to this, that " No person exercising the functions of one of said departments shall assume or discharge the duties of any other," and Art. 33 further provides, that " No Judge shall hold any other office, civil or military or political trust or employment of any kind whatsoever under the Constitution or laws of this State or the United States or any of them."

These provisions relating to the division of governmental powers were considered by this Court, in some of the earliest cases, and we will repeat here what was then said. In *Crane* v. *Meginnis*, 1 G. & J. 476, it is said : " This political maxim made its appearance in some form in all the State Constitutions formed about the time of the War of the Revolution. * * * In whatever terms they have adopted it, in none of these Constitutions are the several departments kept wholly separate and unmixed. In some of them, as in the Constitution of this State, the Executive is appointed by the Legislature and the Judiciary by the Executive, and in others the powers of the several departments are still more blended and mixed together."

In *State* vs. *Chase*, 5 H. & J., 298, it was further said: "New judicial duties may often be unnecessarily imposed and services not of a judicial nature may be sometimes required. In the latter case a Judge is under no legal obligation to perform them." But in *Wright* v. *Wright, Lessee*, 2 Md. 452, the Court uses this language: " The evident purpose of the declaration last quoted is to parcel out and separate the powers of government and to confide particular classes of them to particular branches of the supreme authority. That is to say, such of them as are judicial in their character to the judiciary; such as are legislative to the Legislature, and such as are executive in their nature to the Executive."

In the case now before us, we think, it is clear that the

duty imposed upon the Judge of the Circuit Court by sec-
tion 7, of the Act of 1894, is judicial or "judicial in its
nature and character" and that the objection urged against
the Act upon this constitutional ground is without force.
The statute prescribes that a license to sell liquor shall be
issued only upon certain conditions.  When an objection
is filed to an application, the Clerk is required to submit the
whole matter to a Judge of the Court.  It then becomes
necessary for him to determine whether the prescribed con-
ditions have been fulfilled or not.  This question may be
one of fact or of law or a mixed question of fact and of
law.  In deciding it the Judge hears the evidence and is bound
to make his decision according to the law and the evidence.
The statute requires that the applicant for a license shall
file a " certificate signed by at least nine reputable free-
holders, *bona fide* residents of the neighborhood in which
the applicant proposes to conduct the business."  One of
the objections filed to the appellant's application denied that
the certificate thereto annexed was signed by persons pos-
sessing the qualifications.  It was then necessary to deter-
mine whether the signers of the certificate were freeholders
or not;  whether they were reputable or otherwise;  whether
they were residents of the neighborhood and what was to
be considered the neighborhood.  It is manifest that these
are questions of fact and law upon which the Judge was re-
quired to exercise his judgment after hearing the evidence.
In *Devin* v. *Belt,* 70 Md. 352, where the law there under
consideration provided for the issue of a liquor license by
a Clerk of Court upon the applicant's being recommended
by five respectable freeholders, it was held that it was within
the exclusive discretion of the Clerk to determine whether
the parties making the recommendation were respectable or
not.

It must have been by hearing the testimony of witnesses
as to whether the facts, which are made by statute a pre-
requisite to the issue of the license existed, or not; and then
by the construction of the statute and its application to the

facts of the case, that the Judge reached the decision that the appellant was not entitled to a license. Such a proceeding is within the rule of judicial power as laid down by Judge Cooley in his work on *Constitutional Limitations,* 109, where it is said that to adjudicate upon and protect the rights and interest of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial department. *Ex parte Thompson,* 52 Ala. 107; *Hopson's Appeal,* 65 Conn. 146.

And in *Fong Yue Ting* v. *United States,* 149 U. S. 728, which related to the Act of Congress providing for the deportation of persons of Chinese descent, unlawfully within this country, where the Act provided that a Chinaman might be taken by a collector or marshal before a United States Judge for the purpose of determining whether he was entitled to remain in this country, the Court said: "When in the form prescribed by law, the executive officer acting in behalf of the United States, brings the Chinese laborer before the Judge in order that he may be heard, or the facts upon which depends his right to remain in this country be decided, a case is duly submitted to the judicial power; for here are all the elements of a civil case—a complainant, defendant, and a Judge—*actor, reus et judex,* 3 Bl. Com. 25; *Osborn* v. *Bank,* 9 Wheat. 738. No formal complaint or pleadings are required and the want of them does not affect the authority of the Judge or the validity of the statute."

But it will be observed that under the Act of 1894, the license is not issued by the Judge, but when an objection is made to an application, the duty of the Judge is merely to determine, upon a case at issue, whether the Clerk shall issue the license, or not, according as the applicant is or is not found by him to be qualified under the law. In this respect, the case at bar is clearly distinguishable from those cited in argument by the learned counsel for the appellant.

The case of *United States* v. *Ferreira,* 13 How. 52, relied upon by the appellant, is unlike this. There, an Act of

Congress authorizing Judges to determine whether certain parties were entitled to be placed upon the pension lists was held to be unconstitutional, because the findings of the Judges were subject to revision by the Secretary of War, and since the findings of the Judges were not final and conclusive, it was held that the Act did not confer judicial power. This case is fully reviewed by the Supreme Court in *Interstate Commerce Comm.* v. *Brimson*, 154 U. S. 481. Nor do we find the *Intoxicating Liquor cases*, 25 Kansas, 752, cited by the appellant, at all in conflict with the conclusion reached by us in this case.

It therefore follows, for the reasons given, that the Act of 1894, ch. 6, is valid and constitutional; that the order of Judge Roberts was passed in the performance of a judicial function and in the exercise of a sound judicial discretion. No writ of *mandamus* lies to control that discretion.

*Order affirmed with costs.*

(Decided March 16th, 1899).