CHARLES P. CLOSE ET AL.

*vs.*

THE SOUTHERN MARYLAND AGRICULTURAL
ASSOCIATION.

*Jurisdiction: lower court without—. Appeals: effect of—.*
*Agricultural fairs. Race tracks: license by court;*
*Code, Art. 27, Secs. 218, 221; unconstitutional.*

If a lower court acts without jurisdiction, the Court of Appeals can review its action on appeal or on writ of error or on its own motion; and in such cases it is not necessary that the question of jurisdiction should have been raised below, as Section 9 of Article 5 of the Code does not apply to such cases.

p. 633

The granting of licenses for agricultural associations, race courses or driving parks under Section 217 of Article 27 of the Code, is not within the ordinary powers of the Circuit Courts.

p. 642

When the Circuit Courts act in the exercise of special jurisdiction, the mode prescribed must be substantially followed.

p. 643

The exemptions of agricultural fairs, race tracks, etc., from the effect of the penal statutes should be by legislation, and not by means of licenses to be given by the Judges, under the provisions of Sections 218 to 221 of Article 27 of the Code, and such sections are unconstitutional and invalid.        p. 644

*Decided June 25th, 1919.*

Appeal from the Circuit Court for Prince George's County. (BRISCOE, C. J., CAMALIER and BEALL, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Jackson H. Ralston* (with whom was *Frank M. Stephen* on the brief), for the appellants.

*Shirley Carter* (with whom were *W. Hampton Magruder* and *Wm. G. Brooke* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

On the 14th of February, 1919, the appellee filed a petition, addressed to the Judges of the Circuit Court for Prince George's County, in which it made application to the Court "for a license to be granted it to make and permit betting, pool-selling and book-making upon the result of running races of horses (under the pari-mutual system of selling pools) on its grounds for thirteen (13) days, that is, for the period from April 1st, 1919, to April 15th, 1919, both days included, Sunday excepted." It states that the appellee is a race course and an Agricultural Association, and that its grounds are known as the Bowie Race Course, near the town of Bowie, in the 14th Election District of Prince George's County. There was filed with the application a recommendation of 35 persons, who certified that they were qualified voters of that Election District, and requested the Court to grant the license to the appellee. On the same day an order was passed by JUDGE BEALL of that Court granting the license prayed for, unless cause to the contrary be shown on or before the 18th day of March, 1919, provided notification

be given of the filing of said petition by publication of the order as therein directed. On March 18th the appellants filed a protest against the granting of any license permitting betting, pool-selling and book-making upon the results of running races of horses on the grounds of the appellee, as applied for in the petition, and assigned several causes for the protest.

The matter was set for hearing before a full bench on the 25th of March, and on that day an order was passed by two of the Judges of that Court directing that the clerk issue a license to the appellee—the Court expressly reserving the right and power to revoke the license, if order be not maintained, etc. JUDGE BEALL noted his dissent. An order for appeal was filed the day the order of the Court was passed and on March 27th, the appellants filed a petition in which they asked that the record be removed and an appeal allowed as on writ of error or appeal as the case may be, designating three points of error.

The appellants at once instructed the clerk to make up the transcript and transmit it to this Court, designating what he should include. On April 1st the appellee directed him to include the deed to it and a certificate of the President of the Board of Supervisors that the persons named in the recommendation above mentioned were qualified voters. The record was completed on April 2nd, and received by the clerk of this Court on April 3rd. On the day it was received the appellants filed a motion to advance the hearing. On April 7th a reply to the motion to advance was filed, and on April 8th, the day we met for the April Term, we denied the motion. One of the reasons given in the reply was that the attorney who was to appear for the appellee must prepare for argument in another case on the docket of the term. We concluded that we could not hear the case, and give it such consideration as its importance demanded, before the expiration of the time for which the license was issued.

A motion to dismiss the appeal has since been made on the ground that it is now merely a moot question. Under the circumstances we can have no hesitation in overruling that motion. If the appellants' contention is correct, that the Court had no jurisdiction to pass the order directing the clerk to issue the license, the question may arise in other proceedings as to what protection from section 217 of Article 27 of the Code a license so issued affords the appellee. It may be that it might still be raised by an indictment for violation of that section, but that would probably result in bringing the question back to this Court for determination, if a Grand Jury would, or properly could, indict the appellee under the circumstances. The appellants did everything they could to have the case heard by us before the expiration of the fifteen days, and the appellee opposed the application to have the case advanced.

But beyond what we have said, the lower Court can still grant another license during this year, and continue to grant them from year to year, as long as the present statute remains in force, and it would not be just to it to leave the question undetermined, if there be no other reason why we cannot review the decision of that Court. The reply of the appellee to the motion of the appellants to advance the hearing states that in the Fall of 1917, the Spring of 1918 and again in the Fall of 1918 applications were made by the appellee for licenses, and after protests they were granted, but no appeal was taken. If the appellee's position is correct, the same objection might have been urged in those cases, if appeals had been taken, as they probably could not have been heard before the expiration of the times fixed for racing, unless the appellee consented to having them advanced. It might, therefore, go on indefinitely, without giving those claiming to show cause an opportunity to have the decision of the lower Court reviewed, which, if they are otherwise entitled to appeal, ought not to be denied them on the theory that it becomes a moot question after the races are over.

There would seem to be no doubt about this Court having jurisdiction to hear the appeal. The answer by the appellee to the appellants' contention that the lower Court was prohibited by the constitution of the State from granting the license is that the Court acted judicially, and not merely in a ministerial capacity, and that hence Article 8 of the Declaration of Rights ("that the legislative, executive and judicial powers of government ought to be forever separate and distinct from each other; and no person exercising the function of one of said departments shall assume or discharge the duties of any other") was not infringed upon by the action of the Court. If that be correct, then the appeal in this case will not lie, as no appeal is provided for in the statute, under which the proceeding was taken, and no other ground for the appeal is relied on, but if the action of the lower Court was prohibited by the constitution, then it had no jurisdiction to grant the license and this Court can entertain an appeal from its action. We might refer to many more cases, but the following are sufficient to show that if the lower Court is without jurisdiction to act, this Court can review its action, either on appeal or writ of error, or of its own motion, and it is not necessary that the question of jurisdiction shall have been raised below, as section 9 of Article 5 of the Code does not apply to such question. *Kinnear* v. *Lee,* 28 Md. 488; *Armstrong* v. *Hagerstown,* 32 Md. 54; *Travers* v. *Dean,* 98 Md. 72; *U. S. Express Co.* v. *Hurlock,* 120 Md. 107, and cases referred to in them. On the general question of the right of appeal see also *Hendrick* v. *State,* 115 Md. 552 and *Stephens* v. *Crisfield,* 122 Md. 190, and in *Beasley* v. *Ridout,* 94 Md. 641, in which Article 8 of Declaration of Rights was involved, this Court acted *sua sponte.*

The main question in this case is an important one—not, however, for all of the reasons given by the appellants, some of which their attorneys must know, if the other appellants do not, that we cannot properly consider, and some of the statements made in their brief, as well as in the protest

against the license, should not have been made. There is not a word in the record to justify them, and while there is no evidence on the subject, several of the incorporators of the appellee are members of this bar in good standing, and there is no reason whatever for this Court to assume that the other incorporators of the appellee, or those who signed the recommendation, are not good citizens and honorable men, and entitled to as much consideration by the Court as the appellants are. The question before us is purely one of law, and we have no right to be governed by anything else, whatever our individual views may be as to betting on horse races, or the wisdom of such legislation as is before us.

In *Ag. Soc. of Mont. Co.* v. *State,* 130 Md. 474, JUDGE CONSTABLE reviewed the legislation in this State in reference to gaming on races, and hence we need not do so again. In that case we did not deem it necessary to decide whether the present statute imposed a judicial, or a non-judicial duty upon the courts, because it was shown that the society had not made application to the Court for a license for the time involved, and hence it became immaterial to decide that question. But it is now before us in a way which requires us to determine it. We can appreciate the feeling that all judges have when called upon by statute to do some act which is alleged to be non-judicia, or when there is a question as to the right to perform the duties imposed on them by the statute. They do not want to disregard the provisions of a statute, if they can constitutionally perform the duties, and they naturally hesitate about declining to act until the question is definitely settled. They, therefore, sometimes do act and, it may be, feel bound to act until this Court passes on the validity *vel non* of the statute. When then such a question can properly be determined by us, it is not only our right but generally our duty to do so, and it is only just to the judges who have been, or may be called upon to act under this statute to pass on its validity.

The present law was passed in 1898, and now embraces sections 217 to 221 of Article 27, in 3rd Vol. of Code, to which we will refer. By section 217 it is provided, that it shall not be lawful for any person, association or corporation "to bet, wage, or gamble in any manner, or by any means, or to make or sell a book or pool on the result of any trotting, pacing or running race of horses, or other beasts, or race, contest or contingency of any kind," etc.—concluding by imposing a fine or imprisonment, or both, in the discretion of the Court if convicted. But by section 218 it is provided that "nothing in the next preceding section shall render it unlawful in any county of this State, other than Baltimore City, for any person or persons to make a pool or a book, or to bet within the ground of any agricultural association, race course, or driving park, upon the result of any trotting, pacing or running race of horses which shall be held within the same grounds, race course, or driving park upon which said person shall so make a pool or book, or shall so bet upon the same day on which said race shall be held; provided, the grounds of such agricultural association, race course or driving park be licensed in the manner set forth in the next succeeding section by the Circuit Court for the county within which such grounds or track may be located."

Section 219 provides that any person applying for a license as required by section 218 shall file *"with the Circuit Court * * * his petition for such a license, and before granting the said license, the said Court shall cause notification of said petition to be published,"* etc. Section 220 states what the petition shall contain," and there shall be annexed to this petition a certificate signed by at least twenty-five respectable qualified voters of the election district of the county in which such grounds are located, praying *the Court* to grant the said license." Section 221 prescribes what shall be stated in the license, "and the said Court shall not grant in the aggregate license for more than thirty days in any year, nor more than fifteen days in any one month in any county in

this State," etc.   It then provides that there shall be paid
to the clerk of the Court granting the same, the sum of five
dollars for each and every day for which said license shall
have been granted, etc.

The important question, therefore, is whether the statute
imposses such non-judicial duties on the courts as to prohibit
them from performing them.   The case of *McCrea* v. *Roberts,*
89 Md. 238, is very much relied on by the appellee.   That
case arose under the Act of 1894, Ch. 6, regulating the sale
and granting of licenses for the sale of spirituous and fer-
mented liquors in Carroll County.   The applicant for a
license was required to file his application *with the clerk* of
the Circuit Court, setting out various things specified, and an-
nexed to the application there was required to be a certificate
signed by at least nine reputable freeholders, *bona fide* resi-
dents of the neighborhood, certifying to certain facts and rec-
ommending the issuing of the license.   The clerk was re-
quired to give notice in a newspaper that the application had
been made, and stating that unless cause to the contrary, in
writing, was shown on or before a day named, the license
applied for would be issued, provided the applicant complied
with the requirements of the law.   It was then provided that
if anyone filed with the clerk, in writing, and within the
time specified, any reason why the license should not be
granted, the clerk should forthwith present the application
and certificate and the objection to a judge of the Circuit
Court of the county, and that such judge should proceed to
hear and determine the question as to whether the license
applied for should be issued or not, after giving such notice
to the applicant and the objector as the judge should deem
reasonable, and should award the costs of such hearing as he
should deem equitable and just.   The statute then provided
that if no cause be shown to the contrary, or if cause be shown
and the judge should direct in writing that the license be
issued, the clerk should issue the license upon receiving the
fee required.   McCrea filed an application for a license, and

an objection was filed. The application and objection were presented by the clerk to the Hon. Charles B. Roberts, Chief Judge of the Circuit Court for Carroll County, who set the case for hearing. At the hearing both sides were represented by counsel and witnesses were examined—resulting in an order being passed by the Court dismissing the application for a license. The applicant then applied for a writ of *mandamus* against JUDGE ROBERTS, commanding him to pass an order rescinding and annulling the former order and directing that the application of McCrea be granted by the clerk. From an order overruling a demurrer to the defendant's answer and dismissing the petition, the appeal was taken.

JUDGE BRISCOE delivered the opinion of the Court, and, after citing a number of authorities and pointing out what JUDGE ROBERTS was required to do, held that the Act was not unconstitutional, as requiring the performance by a judge of a duty not judicial in its nature, but that the order was passed in the performance of a judicial function and in the exercise of a sound judicial discretion. But a distinction between that case and the one now before us is so well shown that we will quote from that opinion where it is said: "But it will be observed that under the Act of 1894, the license is not issued by the judge, but when an objection is made to an application, the duty of the judge is merely to determine, upon a case at issue, whether the clerk shall issue the license, or not, according as the applicant is or is not found by him to be qualified under the law. In this respect, the case at bar is clearly distinguishable from those cited in argument by the learned counsel for the appellant." In the brief, the appellant in that case cited the decision of CHIEF JUSTICE TANEY in *U. S. v. Ferreira*, 13 How. 47; *Houseman v. Kent Circuit Judge*, 58 Mich. 364; *Supervisors of Election*, 114 Mass. 247, and other cases. The last two are particularly applicable to this case in some respects.

JUDGE ROBERTS did what many other judges have done in liquor remonstrance cases, which have arisen in counties where liquor was sold and similar provisions were contained in the local laws of those counties. But in the statute now before us *the judge,* and *not the clerk,* grants the license, and the distinction is directly within that made in *McCrea* v. *Roberts.* It is true that the order appealed from in this case directed the clerk to issue the license, although that it is not so provided in the statute, but the Court simply had the clerk act for it, and the statute throughout refers to the granting of the license *by the Court,* as shown by reference to the provisions referred to above. But if it could be conceded that in what was done after notice was given and cause was shown the Court acted judicially, suppose no objection had been made, the Court would doubtless have granted the license as a matter of course, just as the clerk does in the liquor cases when no objection is filed. Can it be said that that is a judicial act? Did Mr. Belt, in *Devin* v. *Belt,* 70 Md. 352, act judicially when, as the Court said in the opinion, "in the performance of a duty imposed on him by law (he) had to determine, before he issued a license, that the appellant was recommended by five persons, that those five persons lived in the immediate vicinity of his place of business, that they were freeholders and that * * * they were respectable freeholders?" It required judgment and discretion, and hence a *mandamus* could not be issued, but those things were not judicial functions, and if they had been the law there involved would have been invalid for imposing judicial duties on the clerk.

But beyond what we have said, the whole foundation for the proceedings which are claimed to have been judicial, determining between the appellants and the appellee whether the Court would issue a license, was the Court causing notification of the petition to be published. Was that a judicial act? Unless that was done, clearly the Court had no power to grant a license, and it would seem to be equally clear that the Court could not be required to publish the notice. Can

it be possible that the Court can, notwithstanding Article 8
of the Declaration of Rights, be required to start a proceed-
ing of this kind, which may or may not become judicial, even
if it be conceded that there may be judicial functions if a
protest be filed, depending upon whether somebody may ob-
ject? Under such a statute as was involved in *McCrea* v.
*Roberts* the Court would never have anything to do with the
license, unless there was an objection, and a case was made
up by reason of the objection, but in this case when the peti-
tion was filed the *Court,* and *not the clerk,* was to act.

If it can be done in this case, the Legislature can require
the Court to grant any other kind of license which for some
reason it chooses to refer to the Court. In *Robey* v. *County
Commissioners,* 92 Md. 150, there was an application for a
writ of *mandamus* against the County Commissioners to com-
pel them to take action and pay the relator certain accounts
for sums of money claimed by him as fees due for services
rendered by him as sheriff of the county. The County Com-
missioners resisted the payment on the ground that the ac-
count had not been approved by the judges of the Circuit
Court, as provided for in the statute. The judges of the
Court were divided as to the constitutionality of the law, im-
posing that duty on them, and hence the accounts were not
approved. This Court held that the statute, which required
the judges to approve the accounts before payment, imposed
upon them a duty not judicial in its nature, and hence was
unconstitutional under Article 8 of the Declaration of Rights.
In *Beasley* v. *Ridout,* 94 Md. 641, a statute provided that
the control and supervision of the jail of Anne Arundel
County and of the prisoners therein should be taken from the
sheriff of the county and committed to a Board of Visitors,
three of whom were to be appointed by the judges of the
Court. This Court held that the appointment of visitors by
the judges was a non-judicial function, and hence the pro-
vision requiring such appointment was in violation of the
Declaration of Rights. See also *Prince George's County* v.

*Mitchell,* 97 Md. 330, in which it was held that appointing a custodian of county property was not a judicial function.

In *Board of Supervisors* v. *Todd,* 97 Md. 247, the Act of 1896, Ch. 195, was before the Court. It provided that whenever half of the registered qualified voters of Wicomico County, or of any election district thereof, who voted for Governor at the last election, petitioned to the Circuit Court to submit the question of granting, or not granting licenses for the sale of liquor at the next Congressional Election, the Court should order the sheriff of the county to give notice of the election, etc. Todd and others presented to the Circuit Court a petition praying it to submit the question to the voters of the district and, *upon the hearing of the petition and the objections,* the Court passed an order submitting the question to the voters of the district. But the Supervisors of Election refused to advertise the election and were preparing the ballots without any provision for the submission of the question. A writ of *mandamus* was prayed for and an answer was filed by the Supervisors alleging that the act was unconstitutional and void, and making other defenses. JUDGE JONES, in speaking for this Court, said on page 262: "The inquiry as to this is whether it was within the constitutional power of the Legislature to impose upon the judiciary, or invest them with a function of this character, and whether the judiciary in the attempt to discharge such a function are not acting without constitutional warrant." He referred to the case of *State* v. *Chase,* 5 H. & J. 297, where JUDGE BUCHANAN said: "New judicial duties may often be unnecessarily imposed, and services, not of a judicial nature, may sometimes be required. In the latter case, a judge is under no legal obligation to perform them," to which JUDGE JONES added, "which was to say that the opinion of the Court was that duties 'not of a judicial nature' could not legally and constitutionally be imposed on the courts or the judges."

After referring to the fact that in the constitutions of 1851, 1864 and 1867, there had been added to the provision of the

Declaration of Rights in the Constitution of 1776, which was in force when *State* v. *Chase* was decided, the last clause of what is now Article 8, and that there was the further declaration (Art. 33) that "No judge shall hold any other office, civil or military, or political trust or employment of any kind whatsoever under the Constitution and laws of this State or of the United States or any of them," the Court used this emphatic language: "It would seem thus to be made evident in our fundamental law that the policy and intent of that law is that the courts and judges provided for in our system shall not only not be required *but shall not be permitted* (italics ours) to exercise any power or to perform any trust or to assume any duty not pertaining to or connected with the administering of the judicial function; and that the exercise of any power or trust or the assumption of any public duty other than such as pertains to the exercise of the judicial function is not only without constitutional warrant but *against the constitutional mandate* in respect to the powers they are to exercise and the character of duties they are to discharge." The Court further said that "counting the names upon a petition, ascertaining whether the names appended thereto are those of voters at the last election for Governor, and ordering an election, is not a judicial function, is a proposition that would seem to be too plain to need argument to enforce it. This order, which by the statute here under consideration, the Court is required to pass, is not to be the result of any judicial inquiry," and it was held that the Act requiring of the Circuit Court the duty of ordering elections was repugnant to the Constitution and bill of rights and therefore void, and reversed the order of the lower Court which had ordered the writ of mandamus to issue. In that case it was not only held that the Act was unconstitutional, but that the Court was not permitted to exercise such powers. In *Beasley* v. *Ridout* and *Prince George's County* v. *Mitchell, supra,* the Court in effect decided the same thing. It seems

clear, therefore, that under our decisions it is not left to the discretion of judges whether they will or will not perform non-judicial duties, but they are not permitted to do so.

We cannot agree with the attorney for the appellee that there is no real distinction between the character of duties to be performed under this statute and those which would be in an injunction case involving the same facts, or in a proceeding by a guardian of an infant to sell the property. Injunctions and the protection of infants are peculiarly within the province of courts of equity, just as are reports of sales by mortgagees, trustees and others, but granting licenses, especially such as those provided for in this statute, cannot be said to be within the ordinary or recognized powers of our Circuit Courts in the counties.

This statute has several striking peculiarities. Although it provides that "before granting the said license the said Court shall cause notification of said petition to be published," etc., it does not in terms provide for an order to show cause, but if that be implied, it does not prescribe what shall be sufficient cause. If the petitioner complies with all of the requirements of the statute, what is there for the Court to try? If it is a valid statute, what sort of cause would be sufficient to justify the Court in refusing a license? Surely, the Court, if acting judicially, cannot be governed by the individual views of the judges as to betting, or pool-selling or book-making on horse races. There is nothing in the statute to be determined, excepting the name of the applicant, the name of the grounds, a definite description of the place where such grounds are located, whether the certificate is signed by at least twenty-five respectable qualified voters of the election district and the number of days and months within which the license shall be operative, even if an order to show cause is intended to be passed. All those things can be done by the clerk of the Court. *Devin* v. *Belt, supra; Fooks* v. *Purnell,* 101 Md. 321.

If the statute was valid, it would clearly be the duty of the Court to satisfy itself that the applicant had complied with it before causing the notification to be given, as it unquestionably has no power to act at all until it is at least substantially complied with.    Although the Circuit Court for a county is a Court of general jurisdiction, yet when it acts in the exercise of a special statutory jurisdiction the mode prescribed must be substantially followed.    If for example the certificate was not signed by at least twenty-five respectable qualified voters the Court would be without jurisdiction to act in the beginning, and hence we say that the Court should satisfy itself that the statute had been complied with before it causes the notification to be given.    It would seem to be impossible to even contend, under our decisions, that up to that point the Court was engaged in any judicial function, and to say that if after the notice was given other parties appeared and undertook to show that the statute had not been complied with the proceedings then became of a judicial nature, because there was then a controversy between those parties and the applicant, as to whether the statute had been complied with, and the Court had thereby acquired jurisdiction, would not be justified.    It might as well be contended that if a Court had no jurisdiction over the subject-matter of a suit, it acquired it by the parties appearing before the Court to contend that it had no such jurisdiction.    The question at a hearing must relate back to the time of causing the notification to be given, and the statute furnishes no ground for objections to granting the license beyond what we have said.    It is for the Court to act in the first place, and the same Court acts if objections are made.    It is not like *McCrea* v. *Roberts* where the clerk began the proceedings and the Court only acted to settle the questions raised before the clerk.

Another feature of this statute is, to say the least, most unusual in this State.    It is in the 27th Article of the Code entitled "Crimes and Punishments."    Section 217 declares to be a misdemeanor the very thing the Court granted the

appellee a license to do. That section can stand and will be the law of the State, although sections 218-221 be held to be invalid. *Ag. Soc. Mont. Co.* v. *State,* 130 Md. 474. The provisions for a license by the Court, to do what without the license would be a clear violation of the statute, in effect exempt the licensees from the operation of the statute. If the Legislature desired to exempt Agricultural Associations or others complying with certain requirements it could have done so in the usual and regular way, by providing that section 217 should not apply to them, but instead of that it undertook to authorize the circuit courts of the counties to do so. Is not that in effect legislation by the Court? It is for the Legislature, and not for the courts to pass statutes, and yet this statute undertakes to authorize the courts to exempt those who commit the acts on the grounds of agricultural associations, etc., by granting them licenses. Such exemptions from the operation of statutes must be by legislative and not judicial action. For reasons we have given we feel constrained to hold sections 218-221 invalid and must reverse the order appealed from.

*Order reversed, the appellee to pay the costs*