## DUKE BOND *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

*Statutes: mandatory and directory provisions; intention of legislature. Municipal corporations: paving loans; construction of—. Enabling act: limitations on amount to be issued in any one year; net amount to be expended. Delegation of power.*

The delegation of a power or discretion, requiring the judgment and determination of those entrusted with such power and discretion by the Legislature, is unlawful.          p. 169

A mandatory provision in a statute is one the omission to follow which renders the proceedings illegal and void.  p. 166

A directory provision is one the observance of which is not necessary to the validity of the proceedings.          p. 166

Whether a particular statute is mandatory or directory depends not upon its form, but upon the intention of the legislature,

to be ascertained from a consideration of the entire act, its nature, object and consequences.                    p. 166

Mere words do not control; but, generally, when no rights will be impaired, provisions with no negative words or implications concerning the time and manner in which official persons shall perform designated acts are directory.          p. 167

The provision in the Acts of 1906, Ch. 401, amended by the Acts of 1908, Ch. 202, authorizing the Mayor and City Council of Baltimore to issue stock for certain public improvements, providing that appropriations from said stock, *based upon estimates of the paving commission,* should be made annually by the Board of Estimates, is directory and not mandatory; and an appropriation of such stock made by the Board of Estimates and afterwards *ratified* by the paving commission, is valid.                    p. 168

The statute also provided that the stock should be issued from time to time and in such amounts as the Mayor, etc., should by ordinance provide; it also vested power in the Commissioners of Finance to issue and sell the stock at the best price obtainable in their judgment; in the ordinance passed by virtue of this statute, the amount of the stock to be issued from time to time, and rate of interest to be paid, not to exceed four (4%) per cent., was delegated to the Commissioners of Finance; *held,* that under the circumstances, this delegation of restricted discretion was not unlawful, especially as the provisions of the ordinance did not vary from the statute.                    p. 170

When a statute forbids a municipality from issuing more than a certain amount of stock or obligations in any year, but is silent as to the amount that may be *expended* therefrom in any one year, an ordinance that provides for the *expenditure* in one year of the moneys derived from stock that was issued in more than one year, is not invalid, although such sums may exceed the amount of stock authorized to be *issued* in any one year.                    p. 171

*Decided March 27th, 1912.*

Appeal from Circuit Court No. 2 of Baltimore City (STUMP, J.).

The cause was argued before Boyd, C. J., Briscoe, Pearce, Burke, Thomas, Pattison, Urner and Stockbridge, JJ.

The facts are stated in the opinion of the Court.

*Daniel M. Henry* and *Chas. McHenry Howard,* for the appellant.

*Robert F. Leach, Jr.,* and *S. S. Field,* for the appellees.

Pattison, J., delivered the opinion of the Court.

This is an appeal from an order of Circuit Court No. 2 of Baltimore City sustaining the demurrer of the appellees, the Mayor and City Council of Baltimore and the Board of Commissioners of Finance of the City of Baltimore, and dismissing the appellant's bill of complaint. The facts as alleged in the bill are substantially as follows:

By Chapter 401 of the Acts of 1906, as amended by Chapter 202 of the Acts of 1908, a Paving Commission for the City of Baltimore was created, and provision was therein made for the issuance of city stock to an amount not exceeding five millions of dollars ($5,000,000) for the purpose of defraying the cost of the work of such commission.

The sixth section of the original Act, as amended by the Act of 1908, contains the following provisions:

"That in order to provide money for the work to be done by said Commission under this Act as and when portions of such work are from time to time being done, the Mayor and City Council of Baltimore is hereby authorized to issue the stock of said corporation to an amount not exceeding $5,000,000, said stock to be issued from time to time and in such amounts as the Mayor and City Council of Baltimore shall by ordinance prescribe; provided, however, not more than one million of dollars ($1,000,000) of said stock shall be issued in any one year, and to be payable at such times and to bear such rate or rates of interest as the Mayor and City Council of Baltimore shall by ordinance provide; said amounts of stock shall be sold and issued by the Commissioners of Finance of the city

of Baltimore, at the best prices obtainable in their judgment therefor. * * * Appropriations for the cost of said work based upon the estimates of said Commission, shall be annually included by the Board of Estimates, in the usual way, in the ordinance of estimates; * * * but no part of said stock shall be issued, nor any member of said commission appointed until the ordinance of the Mayor and City Council of Baltimore providing for the issuance thereof shall be submitted to the legal voters of the city of Baltimore at such time and place as may be fixed by said ordinance, and be approved by a majority of the votes cast at such time and place as required by section 7 of Art. 11 of the Constitution of Maryland; if issued pursuant to such approval, the Mayor and City Council of Baltimore shall levy in each and every year upon all property liable to taxation in the City of Baltimore a sum sufficient to pay the interest accruing on said amount of stock and to create a sinking fund sufficient, with the aid of any premiums on the sale thereof, to redeem said amounts of stock at their respective dates of maturity."

In the ordinance of estimates made for the year 1911 (approved December 2nd, 1910) under the heading of Estimates for New Improvements, was an appropriation of $500,000 appearing therein as follows:

*"Paving Commission.*

To be taken from the Five Million Dollars Paving Loan contingent upon the passage of an ordinance of the Mayor and City Council of Baltimore and its approval by the legal voters of Baltimore City, providing for the issuance of said loan as authorized by Chapter 202 of the Acts of 1908.

For the cost and expense in connection with the grading, paving and curbing and regrading, repaving and recurbing public streets, avenues, alleys and highways in the City of Baltimore, including construction work, salaries and other expenditures, Five Hundred Thousand ($500,000) Dollars."

The Mayor and City Council acting under the authority conferred upon them by the Act of 1906, as amended by the Act of 1908, passed an ordinance known as Ordinance No.

661 which was on the 13th day of April, 1911, approved by the Mayor. The ordinance is as follows:

"Sec. 1st. Be it Ordained by the Mayor and City Council of Baltimore, That the Commissioners of Finance be, and they are hereby authorized and directed to issue the registered stock of the city to the amount of five millions of dollars, from time to time as the same may be required for the purposes hereinbefore named, and that said stock shall be sold by the Commissioners of Finance, from time to time and at such times as shall be requisite, and the proceeds of the sale of said stock shall be used for the purposes hereinbefore named and for no other purposes whatever; provided that this ordinance shall not go into effect until it shall be approved by a majority of the votes of the legal voters of the city of Baltimore cast at the time and place hereinafter designated.

"Sec. 2. And Be it Further Ordained, That said stock shall be issued in sums of not less than one hundred dollars ($100) each, redeemable on the first day of August in the year 1951, and bearing interest at the rate of not more than four per centum per annum, as may be determined by the Commissioners of Finance of Baltimore City, said interest to be payable semi-annually on the first day of February and August in each and every year."

The third section provides for the payment of interest upon said stock and for the redemption of the stock at maturity.

The fourth section provides for the submission of the ordinance to the voters of the city for ratification by them, and names the day upon which the election shall be held.

The fifth section provides for notice and publication of notice of the election.

The ordinance when submitted to the voters of the city for ratification at the election held May 2nd, 1911, was approved by a majority of the votes cast at such election, and thereafter the Mayor nominated the five members, who together with himself were to constitute the Paving Commission. The nominations so made by the Mayor were confirmed by the Second Branch of the City Council on the

29th of May, 1911, and thereafter on the 31st day of May, 1911, an organization of the Commission was effected.

In the ordinance of estimates for the year 1912 an appropriation of $1,000,000 was made for the purposes above set forth.

The Commission, after its organization, met from time to time and at its meeting of December 28th, 1911, passed a resolution in which, after setting out the appropriation of $500,000 as contained in the ordinance of estimates, and after alleging the passage of Ordinance No. 661, its approval by the Mayor and its ratification by the people at the election of May 2nd, 1911, and the appointment of the members of the board and its organization, it alleges that the Commission "proceeded to act upon and incur expenses of various kinds to be paid out of the appropriation by the Board of Estimates, but said Paving Commission had not heretofore formally ratified said appropriation, although it has repeatedly acted upon it."

"Therefore, Be Is Resolved, by the Paving Commission of Baltimore City, appointed in pursuance of the Act of 1906, Chapter 401, and the Act of 1908, Chapter 202, and the ordinance of the Mayor and City Council of Baltimore, passed and approved April 13, 1911, and its ratification thereof at the May election, 1911, That the appropriation of Five Hundred Thousand Dollars ($500,000) to be taken out of the Five Million Dollars ($5,000,000) Paving Loan provided in the ordinance of estimates for the year 1911, be, and it is hereby ratified and approved by this Commission."

At a meeting of the Board of Finance, November 14th, 1911, it was decided to offer for sale by sealed bids on Monday, December 4th, 1911, $500,000 of this stock of the city (the amount appropriated in 1910 for the year 1911) to be issued under the Acts of the General Assembly above mentioned, thus after advertising the stock for sale as determined upon by them at their meeting of November 14th, 1911, the Commissioners of Finance agreed to sell unto the Mercantile Trust and Deposit Company, one of the defendants to these

proceedings, the highest bidder therefor, stock to the amount of $394,200, the same to be delivered to them upon the payment of the purchase price therefor.

It was at this point of the negotiations for the sale of said stock to the Mercantile Trust and Deposit Company that the plaintiff, on December 28th, 1911, filed his bill asking that the defendants and each of them be restrained and enjoined from consummating the sale of said stock and from applying the proceeds thereof to the payment of said "excessive and unauthorized proposed expenditure during the ensuing year."

The plaintiff in his bill charges that the appropriation of $500,000 appearing in the ordinance of estimate for the year 1911, is void, because, as he alleges, at the time of the passage of such ordinance, the ordinance (No. 661) providing for the appointment of the Paving Commission had not been passed, and consequently said commissioners had not been appointed, and therefore the estimate was not made or based upon the estimates of such Commission; and he further charges that the subsequent ratification and adoption of such appropriation could not give validity to it. In this connection, however, he concedes the validity of the million dollar appropriation, for he alleges that it "is the only valid appropriation of any part of the proceeds of such stock which has been made, or which can be made until such appropriation has been made by the ordinance of estimates for the year 1913, when introduced and passed.

The plaintiff also charges that the issue of said stock is illegal and unauthorized for the following reasons: First, because by Ordinance No. 661 the defendants, the Mayor and City Council, did not prescribe the times when and the amount in which the stock was to be issued, and did not fix and establish therein the rate of interest to be paid on such stock otherwise than by providing that such should not exceed four per cent., but delegated the determination of such matters to the Commissioners of Finance, which, as he charges the defendant had no authority to do, but were required to fix and determine the same by ordinance. Second,

because the purpose for which said stock is to be issued is to enable the expenditure of $1,500,000 on the work of the Paving Commission during the year 1912, which amount as he charges, is in excess of the amount that has been validly appropriated for such purposes in the ordinance of estimates for the year 1912, and that the sale of stock to the amount of $1,500,000 "for the purpose of providing such excessive and unauthorized fund for the work of 1912 is illegal and void and contrary to section 6 of the Act, which requires that such stock should be issued as and' when the work of said Commission is from time to time being done, and limits the amount to be issued in any one year for such purposes to the sum of one million dollars."

The objection urged against the validity of the appropriation of $500,000 for the year 1911 arises from the fact that such appropriation was not based upon an estimate of the Paving Commission. At that time Ordinance No. 661 had not been passed by the City Council, approved by the Mayor and ratified by the voters of the City of Baltimore, and consequently the members of the Commission thereunder had not been appointed. The appellees answer this objection by saying that it was not necessary to the validity of the appropriation that it should have been based upon the estimate of the Paving Commission if the appropriation was included by the Board of Estimates in the ordinance of estimates. They contend that the provision of the statute "based upon the estimate of said Commission" is not mandatory but merely directory.

"A mandatory provision in a statute is one, the omission to follow which, renders the proceedings to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceedings. Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the Legislature, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other."

36 Cyc. 1157. "Mere words do not control. The whole sur-soundings, the purposes of the enactment, the ends to be accomplished, the consequences that might result from one meaning rather than another * * * must all be considered in determining whether particular words shall have mandatory or directory effect ascribed to them." *Upshur* v. *Balto. City,* 94 Md. 743. "And generally, when no rights will be impaired, provisions with no negative words or implications concerning the time and manner in which official persons shall perform designated acts, are directory." *Baltimore City* v. *Gorter,* 93 Md. 26. *Bishop on the Written Law,* sec. 255.

The Board of Estimates before and at the time of the passage of the Act here involved exercised a controlling influence in the financial affairs of Baltimore City. By the Charter of the City this board is required to meet annually between the first day of October and the first day of November, and by an affirmative vote of a majority of all the members, make out three lists of moneys to be appropriated by the City Council for the next ensuing fiscal year, one of which is known as Estimates for New Improvements.

The statute in this case provides that "appropriations for the cost of said work * * * shall be annually included by the Board of Estimates, in the usual way, in the ordinance of estimates." Thus, it is to the Board of Estimates that the power is given to include in the ordinance of estimates the appropriations for the cost of the work of the Paving Commission.

While it is true that the ordinance of estimates for the year 1911, in which was included the said appropriation of $500,000, was passed before the passage of Ordinance No. 661, and before its ratification by the people and before the appointment of the members of the Paving Commission, nevertheless the said appropriation was contingent upon the passage of the ordinance and its approval by the legal voters of Baltimore City. Had the voters of the city refused to approve the ordinance, the appropriation would have fal-

len with it, but as the ordinance was approved by a majority of such voters the appropriation became effective, and the Commission, when appointed, availed themselves of such appropriation, and, as the bill alleges, incurred considerable expense in securing accurate information concerning paving methods and paving conditions, accumulated data, made estimates and surveys and adopted a general and comprehensive plan for the paving of the streets of the City of Baltimore, and went so far as to contract for the paving of certain streets in the city named in the bill of complaint, and later, by resolution of December 28th, ratified and approved the action of the Board of Estimates in including such appropriation in the ordinance of estimates for the year 1911. Had no appropriation been made out of this fund, known as the Paving Loan Fund, for the year 1911, when it was so made by the Board of Estimates, then it could not have been made earlier than the first day of October, 1911, and thus until such time the Paving Commission would have been delayed in the prosecution of their work even to the extent of incurring cost in obtaining data or information as to the cost of the work to be done by them.

From a full consideration of the entire statute, its nature and object, the consequences of delay resulting from a different construction, and the fact that no rights are impaired by such construction, we do not think it was the intention of the Legislature in enacting this statute that the validity of this appropriation should be made dependent upon the compliance with that provision of the statute that the appropriation be "based upon the estimate of said commission." Thus we think the statute was directory and not mandatory in this respect, and that the appropriation of $500,000 is not void because of the fact that it was not based upon the estimate of the Paving Commission.

The second objection goes to the sufficiency of the ordinance; the plaintiff contending that it does not determine the times and the amounts of the issue of said stock and does not provide and determine the rate of interest which such stock

should bear, and therefore insists that the ordinance delegates to the Commissioners of Finance the determination of matters and questions which under the Act the Mayor and City Council of Baltimore should themselves have determined by ordinance and which under the statute could not be delegated to the Finance Commission.

Undoubtedly, the broad and unrestricted delegation of a power or discretion, requiring the judgment and determination of those entrusted with such power and discretion by the Legislature, is unlawful. *Baltimore* v. *Stewart,* 92 Md. 550. This principle of law seems well established, but the difficulty arises in its application. In each case it must first be determined whether there be a delegation of power and discretion and, if so, whether or not it violates this rule.

The Act authorized the Mayor and City Council of Baltimore *"when portions of such work are from time to time being done* to issue the stock of the city to an amount not exceeding five millions of dollars, and in such amounts as the Mayor and City Council of Baltimore shall by ordinance prescribe, provided not more than one million of dollars of said stock shall be issued in any one year, and to be payable at such times and to bear such rate or rates of interest as the Mayor and City Council of Baltimore shall by ordinance prescribe." The statute then provides that said amounts of stock shall be sold and issued by the Commissioners of Finance of the City of Baltimore at the best prices obtainable in their judgment therefor. Thus, it is by the statute itself that the power is vested in the Commissioners of Finance to *sell and issue* the stock at the best price obtainable. The right to sell and issue such stock is expressly derived from the authority found in the Act itself and is not dependent upon the ordinance.

It is true, the statute says, "said stock to be issued from time to time and in such amounts as the Mayor and City Council of Baltimore shall *by ordinance prescribe,"* and yet in the ordinance the specific time at which the stock shall be issued and the amounts thereof are not stated, nevertheless

it provides that said stock shall be sold from time to time and at such times as shall be requisite, such times being, as provided by the statute, "when and as portions of the work are being done" and when the money is required to meet the cost and expense of such work; and the amount of stock to be issued at such times is the amount of stock required to meet such payments. Of course, such issuance of stock by the Finance Commission is limited to one million dollars a year, as provided by the statute. The times when and the amounts of stock to be issued under the ordinance do not vary from those prescribed by the statute, but the provisions of the ordinance are in harmony with the statute.

The power or discretion delegated to the Commissioners of Finance to issue the stock from time to time and at such times as shall be requisite is not, we think, an unlawful delegation of power or discretion, when by the statute it is to be issued and sold by them when and as portions of the work are being done and as we may add, when the money is required with which to pay for such work done by and upon the authority of the Paving Commission.

As said above, the statute also provides that the stock shall bear "such rate or rates of interest as the Mayor and City Council shall by ordinance prescribe." The ordinance provides that said stock shall be issued in sums of not less than one hundred dollars each, redeemable on the first day of October, 1951, and bearing interest at the rate of not more than four per centum per annum. While it does not fix the rate of interest to be paid upon the stock, it limits such rate to four per centum per annum, and the Finance Commission, in whom is vested the right to sell said stock at the best prices obtainable in their judgment, in establishing the rate of interest, is restricted to a rate not in excess of four per centum. We do not think the delegation of this restricted discretion here given to the Finance Commission in fixing a lower rate of interest, is unlawful, and especially so when considered in connection with the power vested in

them by the Act to sell said stock and at the best prices obtainable in their judgment.

It may also be said that the delegation of the power and discretion here complained of will be found in the Burnt District Loan, the Annex Paving Loan, the Sewerage Loan and other similar ordinances.

As to the third objection, we find nothing in the statute that prohibits the expenditure by the Paving Commission of more than one million dollars annually. The statute forbids the issuance of more than one million dollars of stock annually, but it is silent as to the amount that may be expended each year.

From what we have said, we think the Court committed no error in passing the order appealed from.

> *Order sustaining demurrer and dismissing*
> *bill affirmed, as per curiam heretofore*
> *filed, with costs to the appellee.*