*Montgomery County Office of Child Support Enforcement ex rel. Jessica Cohen v. Andrew Cohen*, Case No. 931, September Term, 2017

## STATUTORY CONSTRUCTION -- PLAIN MEANING

After the Montgomery County Office of Child Support Enforcement certified to federal authorities that the appellee, Andrew Cohen, was more than $2,500 in arrears in child support, the United States Secretary of State declined to issue Cohen a passport so that he could vacation in Greece with his girlfriend's family. Cohen sought relief in the circuit court and the court ordered the County agency to release the hold on the issuance of the passport to the court when he returned from the vacation. The plain language of federal law and state regulations required the County agency to certify to federal authorities that Cohen was in arrears in his child support and federal law required the United States Secretary of State to deny the passport application. The circuit court violated these provisions when it granted Cohen the requested relief.

## CONSTITUTIONAL LAW -- SEPARATION OF POWERS

The circuit court's order encroached on an executive branch's authority to enforce the dictates of law and regulation with respect to passport holds and child support arrearages. This action violated the separation of powers doctrine.

## ADMINISTRATIVE LAW -- EXHAUSTION OF ADMINISTRATIVE REMEDIES

Cohen failed to exhaust his administrative remedies when he bypassed state procedures established to allow a person adversely affected by a passport hold to challenge the governmental decision.

## COURTS -- JURISDICTION -- MOOTNESS

Even though Cohen had used his passport on his vacation and returned it to the circuit court, the County agency's appeal was not moot. The court retained control over the passport in violation of statute and regulation and gave the County agency the right to litigate that question.

Circuit Court for Montgomery County
Case No. 117543FL

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 931

September Term, 2017

_____

MONTGOMERY COUNTY OFFICE OF
CHILD SUPPORT ENFORCEMENT *ex rel.*
JESSICA COHEN

v.

ANDREW COHEN

_____

Berger,
Reed,
Zarnoch, Robert A.
        (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Zarnoch, J.

_____

Filed:  August 29, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Bessie Decker, Clerk
April 20, 2018

This case arises out of appellee Andrew Cohen's ("Mr. Cohen") failure to pay child support to his ex-wife Jessica Cohen ("Ms. Cohen"), which prompted the Montgomery County Office of Child Support Enforcement ("the agency" or "MCOCSE") to block Mr. Cohen's ability to obtain a passport. The decision of the Circuit Court for Montgomery County to order MCOCSE to remove its hold on Mr. Cohen's passport application and to retain court control of the passport raises concerns involving the separation of powers between Maryland's judicial and executive branches, as well as a state court's authority to encroach on the duties of the United States Secretary of State. On appeal to this Court, MCOCSE asks that we review one issue, which we have reworded slightly:

> Whether the circuit court erred when it ordered MCOCSE to release a block against Mr. Cohen's passport, despite state and federal laws that clearly mandated MCOCSE's action and the Secretary of State's denial of his passport for his failure to pay child support.

For the reasons we explain below, we reverse the decision of the circuit court and remand for further proceedings so that Mr. Cohen's passport may be transferred to the Secretary of State.

## BACKGROUND & PROCEDURAL HISTORY

Mr. Cohen had two children with Ms. Cohen -- a daughter, born in 1996, and a son, born in 2007. The Circuit Court for Howard County entered a judgment of absolute divorce in August of 2012, and Ms. Cohen was awarded primary physical custody of the children. The court ordered Mr. Cohen to pay directly to Ms. Cohen $800.00 per month as support for the parties' children pursuant to an agreement between the parties, beginning on October 15, 2012. On December 16, 2013, the Circuit Court for Howard County granted

a motion filed by Ms. Cohen for a change of venue to the Circuit Court for Montgomery County.[1]

Once the case was transferred, Ms. Cohen filed a petition for contempt against Mr. Cohen for his failure to pay child support in accordance with the prior order, and moved for sole legal custody. The circuit court denied Ms. Cohen's request to hold Mr. Cohen in contempt, but awarded Ms. Cohen sole legal custody of the children, ordered that Mr. Cohen's access to the children would be subject to Ms. Cohen's consent, entered a judgment in favor of Ms. Cohen in the amount of $8,000.00 in unpaid child support as of June 30, 2014, and ordered that all future payments must be submitted to MCOCSE. Regarding the $8,000 arrearage, which had accumulated since October of 2012, the court ordered Mr. Cohen to pay a minimum of $200.00 per month, in addition to his principal child support payment, until the total arrearage was paid in full. Further, the court entered an Earnings Withholding Order to be served on Mr. Cohen's then employer "or any future employer" to ensure timely child support payments in the future.

On March 4, 2016, MCOCSE filed a motion on Mr. Cohen's behalf, seeking a modification of his monthly child support obligation, because he was no longer required to pay child support for his adult daughter. On June 10, 2016, the court modified the child support order by consent and lowered Mr. Cohen's monthly support obligation to $436.00 per month, effective as of March 1, 2016, to reflect his obligation only for the parties' son.

---

[1]  Hereinafter, all references to the "circuit court" are to the Circuit Court for Montgomery County.

Regarding Mr. Cohen's overdue support for both children, which had increased to a total of $21,733.22 as of June 6, 2016, the circuit court ordered him to pay an additional $109.00 per month towards the arrearage for a total monthly obligation of $545.00 to begin on July 1, 2016. After the circuit court lowered Mr. Cohen's monthly support obligation, he did not pay any support until November 21, 2016, when he made a lump sum payment of $3,000.00.[2]

In May of 2017, Mr. Cohen applied for a passport in order to travel to Greece for a ten-day vacation with his girlfriend and her family. The Department of State, who oversees the issuance of passports, denied his application because it had received certification from MCOCSE that his child support arrears were more than $2,500.00.[3] On May 24, 2017, Mr. Cohen filed "Defendant's Petition for MCOCSE Release of Passport Hold" with the circuit court. Specifically, Cohen requested that the circuit court do the following:

1. Order [MCOCSE] to release the hold on the Defendant's ability to obtain a passport for the sole purpose of allowing his planned trip in August to Greece;

2. Order that by August 31, Defendant will submit his passport to the Court for holding until his arrearages are paid or pending further Court Order . . . .

The primary reason asserted by Mr. Cohen to have the block removed was that his girlfriend's father, Leonard Sloan ("Mr. Sloan"), was paying for Mr. Cohen's travel

---

[2]     Mr. Cohen made no child support payments between April 22, 2016 and November 21, 2016.

[3]     As we discuss below, 42 U.S.C. § 652(k) requires the Secretary of State to deny a passport application when it has received certification that the applicant owes a child support arrearage exceeding $2,500.

expenses. He argued that the trip was planned without his knowledge of his ineligibility for a passport, and that he would continue working for his current employer upon his return. Further, Mr. Cohen claimed in his petition that "since the Consent Order [of June 10, 2016] was entered, Defendant has paid his child support on time and in full, pursuant to the agreement." Attached to the petition was an affidavit of Mr. Sloan, who affirmed that it was his "clear intention to pay for the family, and specifically for Andrew Cohen's meals, excursions and other miscellaneous expenses associated with the trip." Mr. Sloan added that he had "taken similar family trips in the past with [his] family (to Puerto Rico, Italy, the Outer Banks, etc.), and [had] paid all costs involved."

MCOCSE opposed the petition, noting first that Mr. Cohen's claim that he had paid his child support on time and in full since the date of the last consent order was not accurate. As MCOCSE pointed out, Mr. Cohen had not made any payments at all between April 22, 2016 and November 21, 2016, when he finally made a $3,000 payment[4] -- $2,564.00 of which was applied to his burgeoning arrearage. Further, MCOCSE noted in its opposition that Mr. Cohen's reason for obtaining a passport was not a serious one, such as a family emergency overseas or an employment opportunity for which the statutory/administrative scheme provides narrow exceptions.[5] MCOCSE averred, therefore, that Mr. Cohen's situation -- having failed to pay more than $21,000.00 in child support but wanting to travel

---

[4]    According to Mr. Cohen's attorney at the hearing, the November 21st payment was from Mr. Cohen's receipt of an inheritance.

[5]    See, *infra*, our discussion below of two potential exceptions to Maryland's passport denial program.

4

with his girlfriend's family merely for leisure -- illustrated the very purpose for the passport denial provisions.

The circuit court held a hearing on June 21, 2017 and permitted Mr. Cohen to participate by telephone because he resided in Florida at that time. MCOCSE asserted at the hearing that, following the child support order in 2012, Mr. Cohen had not made any payments for nearly three years. His first support payments began only after the court ordered that Mr. Cohen's wages be garnished. Even after the reduction in his minimum monthly child support payment, Mr. Cohen failed to make any payments from April to November of 2016. Following that gap, he made a lump sum payment of $3,000 from an inheritance and then stopped making payments again until the end of January 2017, when MCOCSE imposed another wage withholding order on his most recent employer. By the time of the June 21, 2017 hearing, Mr. Cohen owed $21,377.13 in overdue child support, and the only periods during which Mr. Cohen made timely, consistent payments were the result of the agency obtaining wage withholding orders.

At the end of the hearing, however, the circuit court granted Mr. Cohen's petition. The court ordered MCOCSE to "release the Passport Hold" immediately, and for Mr. Cohen to surrender his passport to the circuit court by August 31, 2017, providing that the circuit court "shall hold [Mr. Cohen's] passport until the full balance of arrears is paid or until further Order of Court." The day after the hearing, MCOCSE filed a motion to alter or amend the judgment and a motion to stay, which the circuit court denied. MCOCSE then filed a motion to stay the case pending appeal to this Court, and the circuit court denied the motion in an order on July 20, 2017. MCOCSE, therefore, released the hold on Mr.

Cohen's passport the same day. Following Mr. Cohen's vacation, he turned over his passport to the circuit court, where we assume it remains today. MCOCSE timely appealed to this Court, and Mr. Cohen did not file an appellee's brief. We provide further details regarding the hearing below on the petition.

## DISCUSSION

### I. Standard of Review

We review the circuit court's construction of statutes *de novo* for legal correctness. *See Md.-Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 181 (2006) (citing *Moore v. State*, 388 Md. 446, 452 (2005)). "Where the order involves an interpretation and application of Maryland statutory and case law, we must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review." *Baltimore Cty., Md. v. Aecom Servs., Inc.*, 200 Md. App. 380, 397 (2011) (quoting *Powell v. Breslin*, 195 Md. App. 340 (2010), *cert. granted*, 418 Md. 190 (2011)). Similarly, when "the issue surrounding the [circuit court's] order . . . involves an interpretation and application of Maryland as well as federal statutory and case law," we determine, upon appellate review, whether the circuit court's decision was legally correct. *Dep't of Pub. Safety & Corr. Servs. v. Doe*, 439 Md. 201, 219 (2014) (citing *Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72 (2004)).

Although the circuit court discussed the policy underlying Maryland and federal statutes requiring the denial of passports to applicants with child support arrears exceeding $2,500, the court did not directly construe any of these statutes at the hearing or provide a memorandum opinion. In our view, the plain language of the pertinent Maryland and

6

federal statutes and regulations governing the denial of passports for a substantial child support arrearage dictate a different result here.

## II. The Circuit Court Erred By Ordering MCOCSE to "Release the Hold" on Mr. Cohen's Passport.

The circuit court gave the following ruling at the hearing on the petition:

> Okay. Well, I mean, I can see both sides of it, and I guess from the policy view, the policy view of the child support enforcement agency would say well, I guess what Mr. Sloan should do is give him the money that would pay for the trip and say use this towards your child support. So, you know, it would have cost, I don't know, $5,000, $10,000 for you to go to Greece. But let's use that $5,000 or $10,000. You'll miss this trip, but you'll pay off half of your child support obligation. And that's certainly one way that it could have been done. [ . . . ] But that didn't happen.

> \* \* \*

> But on the other hand, Mr. Cohen is belatedly up to date on the . . . modified child support order. I mean, this is the current child support order. He's complying with the current child support order. As long as he's paying the $550 a month, that's really what he's obligated to do. And yes, the arrearage is going to stay there and it's going to go down slowly. And he has a choice, I guess, as to how to pay it down, whether it takes ten years or he could do it in ten minutes if he had the $20,000.

> But it also sounds like he has other obligations. And I know they're not directly related, but if he's helping his older daughter and helping his son with private school and all the rest of it, he's not just some deadbeat dad who disappeared to Florida and hasn't been heard from since. Now, I agree, if he had just disappeared and the arrearage was $20,000 and counting and he wasn't paying anything, then obviously he shouldn't have a passport. But under all these circumstances, I am going to grant the motion.

7

Thereafter, Mr. Cohen's attorney inquired, "I'd ask that the Court I guess retain jurisdiction in case there's wording that needs to be changed. But I believe this [draft order] should be sufficient." The court agreed to "look into it . . . with the State Department," presumably regarding the language necessary to have the hold removed, and concluded the hearing.

A.    **Child Support Enforcement Regulatory Law & the Framework of Maryland's Passport Denial and Revocation Program**

Enacted August 14, 1935, and amended August 22, 1996, federal legislation appropriates funds to the states "[f]or the purpose of enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living . . . ." *See* 42 U.S.C. § 651. Section 652 of Title 42 sets forth the authority of the United States Secretary of Health and Human Services ("HHS") over state child support enforcement programs. *See* 42 U.S.C. § 652(a)(3). Furthermore, 42 U.S.C. § 654 requires that each state plan must "provide that the state will . . . enforce any support obligation established with respect to . . . a child with respect to whom the State provides services under the plan; or . . . the custodial parent of such a child." *See* 42 U.S.C. § 654(4)(B). Each state plan must "provide for the establishment or designation of a single and separate organizational unit, which meets such staffing and organizational requirements as the Secretary may by regulation prescribe, within the State to administer the plan." 42 U.S.C. § 654(3).

The statute includes specific standards that each state child and spousal support plan must meet and certain enforcement procedures that it must include. Under § 654(31), state plans must incorporate the following procedure:

8

> A State plan for child and spousal support must . . . provide[] that the State agency will have in effect a procedure for certifying to the Secretary [of HHS], for purposes of the procedure under section 652(k) of this title, determinations that individuals owe arrearages of child support in an amount exceeding $2,500 . . . .

42 U.S.C. § 654(31).

The Secretary of State is vested with the authority to grant and issue passports, *see* 22 U.S.C. 211a, and to cancel passports that are erroneously obtained. *See* 8 U.S.C. § 1504.

Subsection 652(k), therefore, provides the following process:

> (1) If the Secretary [of HHS] receives a certification by a State agency in accordance with the requirements of section 654(31) of this title that an individual owes arrearages of child support in an amount exceeding $2,500, the Secretary shall transmit such certification to the Secretary of State for action (with respect to denial, revocation, or limitation of passports) pursuant to paragraph (2).
>
> (2) The Secretary of State shall, upon certification by the Secretary transmitted under paragraph (1), refuse to issue a passport to such individual, and may revoke, restrict, or limit a passport issued previously to such individual.

42 U.S.C. § 652(k). Similarly, the corresponding federal regulation provides:

> The Department [of State] *may not issue* a passport . . . in any case in which the Department determines or is informed by competent authority that:
> * * *
>
> (2) The applicant has been certified by the Secretary of Health and Human Services as notified by a state agency under 42 U.S.C. 652(k) to be in arrears of child support in an amount exceeding $2,500.

22 C.F.R. 51.60(a).

9

Additionally, 42 U.S.C. § 666 provides that "each State must have in effect laws requiring the use of" certain procedures "to increase the effectiveness of the program." *See* 42 U.S.C. § 666(a). For instance, § 666(a) provides that states must implement procedures for withholding income from a noncustodial parent, *see* (a)(1)(A); a noncustodial parent's state income tax refund to the custodial parent, *see* (a)(3)(A)-(B); placing liens on real and personal property owned by a noncustodial parent for the amount of overdue child support, *see* (a)(4) and "withhold[ing] or suspend[ing], or . . . restrict[ing] the use of driver's licenses, professional and occupational licenses, and recreational and sporting licenses of individuals owing overdue support." 42 U.S.C. § 666(a)(16).

Consistent with the requirements of § 654(3), the General Assembly of Maryland enacted what is now § 10-106 of the Family Law Article ("FL") of the Maryland Code (1984, 2012 Repl. Vol.), providing for the creation of the Child Support Administration ("the Administration") within Maryland's Department of Human Services.[6] Pursuant to FL § 10-107, the Administration has the "authority, duties, and functions under any law of this State subject to the authority of the Secretary of Human Services under any law of this State." Under FL § 10-114(a), "the Secretary of Human Services shall . . . adopt rules and regulations for the collection of support" as well as "standards for . . . intergovernmental cooperation, and other management operations that are necessary to proper and efficient collection of support." Further, FL § 10-114(a)(3) states that "[t]he Secretary of Human

---

[6] Within Title 10 of the Family Law Article, "Administration" refers to "the Child Support Administration" of the Department of Human Services. *See* FL § 10-101(b).

10

Services shall . . . delegate any responsibility for support enforcement to a local department," if a local agency asks for that responsibility and it is capable of carrying out the duty to collect support.

The Code of Maryland Regulations ("COMAR") 07.07.17.01 *et seq.* sets forth Maryland's requirements for the "Passport Denial and Revocation Program" ("Passport Denial Program"). *See* COMAR 07.07.17.01 to 07.07.17.06. The purpose of the Passport Denial Program is to provide "procedures of the [Administration] for identifying and reporting certain delinquent obligors of child support to the federal Office of Child Support Enforcement (OCSE) [within the Department of HHS] for the denial, revocation, or limitation of the obligor's passport." COMAR 07.07.17.01(A).

COMAR 07.07.17.01 provides, expressly, that "an obligor with support obligations over $2,500 is subject to denial, revocation, or limitation of the obligor's passport." COMAR 07.07.17.02(A) states that "[t]he Administration *shall* certify to OCSE an obligor whose support obligation arrearage exceeds $2,500."[7] (Emphasis added). Simply put, Maryland law requires MCOCSE -- the "local department" delegated the authority to enforce Maryland's child support laws within Montgomery County[8]-- to certify to the Secretary of HHS any parent "whose support arrearage exceeds $2,500." *Id.* As we

---

[7] "OCSE" refers to the federal Office of Child Support Enforcement -- "a separate organizational unit, under the direction of a designee of the Secretary [of HHS], who shall report directly to the Secretary and who shall . . . establish . . . standards for State programs for . . . obtaining child support . . ." *See* 42 U.S.C. § 652(a)(1), (3).

[8] See FL § 10-114(a)(3), requiring the Secretary of Human Services to delegate the responsibility of support enforcement to a local agency, as long as certain conditions are met.

11

discussed above, pursuant to 42 U.S.C. § 652(k), once a state agency notifies the Secretary of HHS that an obligor "owes arrearages of child support in an amount exceeding $2,500, the Secretary *shall* transmit such certification to the Secretary of State," and "[t]he Secretary of State *shall* . . . refuse to issue a passport to such individual." *See* 42 U.S.C. § 652(k)(1)-(2) (Emphasis added). To be an effective enforcement mechanism, therefore, the Passport Denial Program relies on cooperation between state and federal agencies to abide by the procedures outlined in complementary state and federal statutes and regulations.

The obligor is not left without a path to remedy the restriction of his or her passport, however. "[A]t least 30 days before certification," the enforcement agency "shall send written notice of the certification to the obligor at the obligor's last known address." *See* COMAR 07.07.17.02(B). The notice must inform the obligor that his or her passport will be denied by the United States Department of State and that the obligor has an "opportunity to contest the accuracy of the arrears," as well as describe the "[p]rocedures for requesting an investigation." *See* COMAR 07.07.17.02(C). If the obligor files a timely request for investigation, the Administration must review the case and prepare a written summary of its conclusion. COMAR 07.07.17.04(A). If the Administration concludes that the obligor owes an arrearage exceeding $2,500, it must notify the obligor that he or she must "pay the

12

arrears in full" to prevent his or her passport from being denied or revoked. COMAR 07.07.17.04(C).[9]

Finally, COMAR 07.07.17.05 provides an additional administrative remedy for an obligor, who has failed to pay his or her arrearage in full. The obligor may appeal the decision "[w]ithin 30 days of receipt of the [Department of State's] notice" to the obligor that his or her passport has been denied. *See* COMAR 07.07.17.05. If the obligor chooses to appeal, he or she may do so "only on the claim that": (1) the arrearage at issue "does not exist"; (2) the arrearage never exceeded the $2,500 threshold"; or (3) "[a] passport is required for employment purposes and neither the obligor nor the obligor's employer is able to pay the arrears in full."[10] *See* COMAR 07.07.17.05(C).

> **B. MCOCSE's Argument on Appeal is Not Moot Because the Circuit Court has Retained Possession of Mr. Cohen's Passport and Could Issue an Order Granting Mr. Cohen the Use of His Passport Again.**

Before we reach the merits of the circuit court's decision, we address the issue of mootness and whether a justiciable controversy remains for us to decide, even though Mr. Cohen has already obtained his passport, vacationed in Greece, and surrendered the passport to the circuit court.

---

[9] COMAR 07.07.17.04 and .06 provide two exceptions based on the obligor's reason for needing the passport, which we discuss below.

[10] As we discuss below, COMAR 07.07.17.06 provides an additional exception for circumstances in which the denial of the obligor's passport would result in an "undue hardship." Absent a claim of such hardship, the determination of whether a hold is placed on an obligor's passport is not subject to any balancing of the equities.

We, generally, do not decide moot questions. *See Att'y Gen. v. Anne Arundel Cnty. School Bus Contractors Ass'n, Inc.*, 286 Md. 324, 327 (1979). "A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Id.* (Citations omitted). In some instances, however, we may address the merits of an issue when it "implicates a matter of important public policy and is likely to recur but evade review." *Suter v. Stuckey*, 402 Md. 211, 220 (2007) (Citations omitted). This is particularly so where the matter involves "a relationship between government and its citizens, or a duty of government . . . ." *See Lloyd v. Supervisors of Elections*, 206 Md. 36, 43 (1954).

The relief that MCOCSE seeks on appeal is that we reverse the circuit court's order and direct the removal of the passport from its control. As we explain below, we hold that the circuit court erred by ordering MCOCSE to "release the Passport Hold for [Mr. Cohen] immediately" and by retaining control over the passport "until the full balance of arrears is paid or until further Order of Court."[11] The circuit court's retention of Mr. Cohen's passport and control over its future release in violation of the federal and state statutory schemes creates an ongoing controversy.[12]

Section 652(k) requires the Secretary of State to deny an obligor's passport if the obligor has been certified as having an arrearage exceeding $2,500, but merely provides

---

[11]    For purposes of resolving the mootness issue, we will assume the correctness of MCOCSE's legal contentions.

[12]    As far as we know, Mr. Cohen has not paid his child support arrears in full and his arrearage continues to exceed $2,500.

the Secretary discretion to revoke an obligor's passport for the same reason, if the passport was previously issued prior to the certification. *See* 42 U.S.C. § 652(k)(2) (Emphasis added) (providing that the Secretary "*shall . . .* refuse to issue a passport to such individual, and *may* revoke, restrict, or limit a passport issued previously"). At this stage, the passport was "previously issued" to Mr. Cohen, and therefore, the Secretary of State will have the discretion to revoke the passport once MCOCSE re-certifies Mr. Cohen to the federal executive branch. This shift in focus of the presently applicable federal statute does not make the case moot. This case, therefore, presents an "existing controversy" because the circuit court's retention of the passport interferes with the Secretary of State's discretion under 42 U.S.C. § 652(k). [13]

Even if the issue of whether the circuit court should have ordered MCOCSE to reverse its certification of Mr. Cohen to the Department of HHS passport was moot, the issue would fall within the public policy exception described in *Suter*, 402 Md. at 220. The circuit court's decision infringed on the child support enforcement duties of MCOCSE, and the potential exists for the circuit court to release the passport to Mr. Cohen again. Mr. Sloan's affidavit stated that he frequently pays for international vacations for his family; therefore, if Mr. Cohen files another petition seeking the use of his passport, the circuit

---

[13] During oral argument before this Court, Counsel for MCOCSE suggested that the Department of State typically does not exercise its discretion to revoke a previously issued passport under 42 U.S.C. § 652(k) because of a lack of funding to carry out that task. Of course, there is nothing in the record on this point. However, what matters here is that the Secretary of State has the exclusive discretion to revoke the passport and the court's action has interfered with the exercise of that discretion.

court could find that Mr. Cohen has made a recent effort to pay towards his arrearage and decide to release the passport to him for the same reasons that it issued its order in this case. Accordingly, to remedy the ongoing contravention of the statutory/administrative process caused by the circuit court's retention of the passport, we address the merits of the case.

**C.     The Circuit Court Did Not Have Authority to Order MCOCSE to Release the Hold on Mr. Cohen's Passport.**

In reaching its conclusion, the circuit court suggested that the primary purpose of the passport denial statute was to prevent delinquent noncustodial parents from spending money on international travel that could go to their unsupported children instead. During MCOCSE's argument, the court responded, "I think the point of the law is you don't want people to use what money they have to go travel or -- of course this is just one thing." The court added, "So [the passport denial statute] is just a way, I guess, of encouraging people not to, you know, take expensive trips when they should be using that money for child support, right? But I guess what [Mr. Cohen] is saying is it's not his money." The circuit court concluded that the agency's argument was that "Mr. Sloan should . . . give [Mr. Cohen] the money that would pay for the trip and say use this towards your child support."

Because the most recent child support order reduced the amount that Mr. Cohen was required to pay towards the overdue child support per month, and he had made a lump sum payment of $3,000 since the order, the court reasoned that Mr. Cohen was "belatedly up to date." The court explained, "He's complying with the current child support order. As long as he's paying the $550 a month, that's really what he's obligated to do." Although Mr.

16

Cohen had failed to make consistent, voluntary payments under any agreement or order, the court found that Mr. Cohen "has a choice, I guess, as to how to pay it down, whether it takes ten years or he could do it in ten minutes if he had the $20,000." For all of these reasons, the court reached the following conclusion:

> [Mr. Cohen is] not just some deadbeat dad who disappeared to Florida and hasn't been heard from since.[14] Now, I agree, if he had just disappeared and the arrearage was $20,000 and counting and he wasn't paying anything, then obviously he shouldn't have a passport. But under all these circumstances, I am going to grant the motion.

### i. *The circuit court's order encroached on the authority of the State's executive branch and violated separation of powers principles.*

Complicating this case is its procedural posture when the circuit court ordered the agency to reverse its certification of Mr. Cohen, prior to any administrative review by the Administration -- a result that, in our view, violated separation of powers principles. Although MCOCSE failed to raise a separation of powers issue before the circuit court, and we, ordinarily, will not decide issues not previously raised in or decided by the lower court, *see* Md. Rule 8-131(a), "jurisdiction is a matter which, if noticed, will be addressed

---

[14] Mr. Cohen's counsel, during oral argument, asserted that Mr. Cohen should be credited as having contributed to his children's support indirectly, because Mr. Cohen's parents had paid directly for private school tuition for the parties' son and college tuition for their daughter. The circuit court referenced that fact in its conclusion that Mr. Cohen had not totally neglected his responsibilities, explaining, "I know they're not directly related, but . . . he's helping his older daughter and helping his son with private school and all the rest of it." As the circuit court made clear for Mr. Cohen in its previous order, however, neither his parents' direct payments of his children's expenses, nor any expense paid directly by Mr. Cohen, counted towards Mr. Cohen's child support arrearage or principal monthly obligation.

by a court even though it was not raised by any of the parties." *See Duffy v. Conaway*, 295 Md. 242, 254 n. 8 (1983) (citing *Biro v. Schombert*, 285 Md. 290, 293 (1979)).[15] "[I]f the action of the lower court was prohibited by the Constitution, then it had no jurisdiction to [take the action]." *Close v. S. Md. Agric. Ass'n*, 134 Md. 629, 108 A. 209, 211 (1919).[16]

The separation of powers doctrine, embodied in Article 8 of the Maryland Declaration of Rights, "explicitly prohibit[s] one branch of government from assuming or usurping the power of any other branch." *Getty v. Carroll Cty. Bd. of Elections*, 399 Md. 710, 730 (2007). Although, as the Court of Appeals has said, "the separation of powers doctrine does not impose, in every circumstance, a complete separation between the three branches of this State's government," it is also true "that the constitutional elasticity [of the doctrine] cannot be stretched to a point where, in effect, there no longer exists a separation of governmental power." *Id.* at 732 (quoting *Schisler v. State*, 394 Md. 519, 576 (2006). "[T]he purpose of the doctrine" is "to preserve[] to the one branch of government its essential functions and prohibit[] any other branch from interfering with it . . . ." *Id.* (quoting *McCulloch v. Glendening*, 347 Md. 272, 283 (1997)).

---

[15] In *Duffy*, the Court of Appeals, *sua sponte*, invoked the separation of powers doctrine to conclude that a circuit court lacked jurisdiction to conduct an advisory trial in an election challenge. 295 Md. at 254.

[16] The question in *Close* was "whether the statute [governing licensing for betting on horse races] imposed . . . nonjudicial duties on the courts," such that the performance of such duties would be a violation of the separation of powers clause in Article 8 of the Declaration of Rights. *See Close*, 108 A. at 211. Emphasizing the necessity of this separation, the Court added, "It is for the Legislature, and not for the courts, to pass statutes . . . ." *Id.* at 215.

18

Intertwined with the doctrine of the separation of powers is the doctrine of exhaustion of administrative remedies. "The exhaustion doctrine fulfills the legislature's intent of delegating a matter to an agency for initial review and decision [and] promotes the policy of allowing agencies to exercise their expertise . . . ." *See Priester v. Baltimore Cnty.*, 232 Md. App. 178, 200 (2017); *see also McKart v. U.S.*, 395 U.S. 185, 194 (1969) (Citation omitted) (explaining that the exhaustion doctrine at the federal level is "an expression of executive and administrative autonomy"). The circuit court has no general "oversight authority over administrative agencies"; that "authority . . . lies within the executive branch of government." *Bd. of License Comm'rs for Anne Arundel Cnty. v. Coridor Wine, Inc.*, 361 Md. 403, 415 (2000). The circuit court's authority typically falls within its "jurisdiction over actions for judicial review." *Id*. Thus, "the doctrine of administrative exhaustion requires the aggrieved party to exhaust the prescribed process . . . before . . . 'invok[ing] the ordinary jurisdiction of the courts.'" *Priester*, 232 Md. App. at 193 (quoting *Soley v. State Comm'n on Human Relations*, 277 Md. 521, 526 (1976)); *see also Walzer v. Osborne*, 395 Md. 563, 585 (2006).[17]

Under the state regulations, Mr. Cohen had the preliminary right to contest MCOCSE's certification and request an investigation, and to appeal the certification before

---

[17] *See Bd. of Educ. For Dorchester Cnty. v. Hubbard*, 305 Md. 774, 787 (1986) ("While the failure to invoke and exhaust an administrative remedy does not ordinarily result in a trial court's being deprived of fundamental jurisdiction, nevertheless, because of the public policy involved, the matter is for some purposes treated *like* a jurisdictional question. Consequently, issues of primary jurisdiction and exhaustion of administrative remedies will be addressed by this Court sua sponte even though not raised by any party.") (Emphasis in original).

19

an administrative law judge upon his receipt of the Department of State's denial of his passport. *See* COMAR 07.07.17.04, .05.[18]  Mr. Cohen bypassed those administrative remedies entirely and, instead, requested that the circuit court order MCOCSE to reverse an agency action that it was required to take under the detailed child support enforcement scheme.  The circuit court did not articulate any particular basis under the Maryland or federal child support enforcement statutory schemes that would give the court the authority to interfere with the agency's decision to certify Mr. Cohen to the Secretary of HHS.  By ordering MCOCSE to "release the hold" on Mr. Cohen's passport, the circuit court infringed on the authority of the state executive branch to carry out its mandatory duty to certify Mr. Cohen to the Secretary of HHS, and the Secretary of State's duty to deny the passport.

### ii. *The passport denial statute promotes prompt payment of overdue child support by providing a consequence for the obligor.*

Alternatively, even if the circuit court had the authority to review the agency's decision to certify Mr. Cohen to the Secretary of HHS, the court's decision was based on an incorrect application of the federal and Maryland laws requiring the denial of passports to obligors whose arrearages have exceeded $2,500.  In our opinion, Mr. Cohen's situation fell squarely within the plain language of the federal and Maryland passport denial statutes, and no exceptions applied.

---

[18]     Additionally, COMAR 07.01.04.03, governing the appeals process for child support enforcement appeals, states that "[a]n individual may request a hearing or a record review when the agency . . . [h]as caused the denial or revocation of the individual's passport as a result of a child support arrearage reported to the federal [OCSE]."

"[I]f the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation and the specific purpose of the provision being interpreted, our inquiry is at an end." *Sears, Roebuck & Co. v. Gussin*, 350 Md. 552, 561-62 (1998) (quoting *Philip Elecs. v. Wright*, 348 Md. 209, 216-217 (1997)); *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (quoting *Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842 (1984)) ("The starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'"). Courts may not "surmise a legislative intention contrary to the plain language of a statute or insert exceptions not made by the legislature." *Gussin*, 350 Md. at 564 (quoting *Coleman v. State*, 281 Md. 538, 546 (1977)).

In addition, we consider whether the text of a statute in question indicates an intent that the statute is mandatory or directory. The result of our determination that a provision is mandatory and that the circuit court did not follow its requirements is that the proceedings below are deemed "illegal and void." *See Bond v. Cty. Of Baltimore*, 118 Md. 159, 260 (1912). The Court of Appeals has explained the following:

> The term "shall" is . . . unambiguous. It remains a well-settled principle of this Court that "[w]hen a legislative body commands that something be done, using words such as 'shall' or 'must,' rather than 'may' or 'should,' we must assume, absent some evidence to the contrary, that it was serious and that it meant for the thing to be done in the manner it directed."

*Walzer*, 395 Md. at 580 (quoting *Thanos v. State*, 332 Md. 511, 522 (1993); *Murphy v. Smith*, 138 S. Ct. 784, 787 (2018) (Citation omitted) ("[T]he word "shall" usually creates a mandate, not a liberty . . . ."); *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969,

21

1977 (2016) (Citation omitted) ("When a statute distinguishes between "may" and "shall," it is generally clear that "shall" imposes a mandatory duty."). "[T]he character and purpose of the provision" further aids us in our determination of whether a statute is mandatory. *See Young v. Lynch*, 194 Md. 68, 73 (1949). Our interpretation of the passport denial statutory and regulatory law, therefore, involves an analysis of both the statutory language and the purpose of the Maryland and federal statutory enforcement schemes.

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act (PWORA) -- a significant reform effort to reduce the number of families relying on welfare. *See* PWORA, Pub. L. No. 104-193, 110 Stat. 2105 (1996) (codified as amended at U.S. Code, Title 42). With that goal at the forefront of the Act, child support collection and enforcement was one of the Act's major components. *See* 42 U.S.C. § 651. The funds to assist states in carrying out child support services were authorized, in part, "[f]or the purpose of enforcing the support obligations owed by noncustodial parents to their children . . . [and] obtaining child and spousal support. . . ." *Id.* In order to be eligible for the block grants provided by the bill, the Secretary of HHS must approve each state plan, which must include that the state will operate a child support enforcement program in accordance with Part D of the Subchapter (i.e. "Child Support and Establishment of Paternity"). *See* 42 U.S.C. § 602(a)(2); *see also* 42 U.S.C. § 651 *et seq.* (providing certain uniform procedures and requirements for state child support enforcement plans and agencies).

Federal courts have elaborated on the purpose of the passport denial provisions as a child support enforcement mechanism. The Court in *Eunique v. Powell* explained that

22

Congress's concerns that "unsupported children must often look to the public fisc . . . for financial sustenance . . . [was] the reason that the Child Support Enforcement Program, 42 U.S.C. §§ 651-669, was enacted in the first place." 302 F.3d 971, 975 (9th Cir. 2002) (Citation omitted). There, the Court found that the obligor had "failed to live up to a most basic civic and even moral responsibility," and concluded, "Unfortunately for her, Congress has decreed that her duties to her children must take precedence over her international travel plans. It has ordered her priorities for her." *Id.* at 975-76. Similarly, the U.S. District Court, in *Risenhoover v. Washington Cnty. Comm. Servs.*, reiterated that the passport denial statute helps reduce the widespread problem of noncustodial parents who fail to support their children "because it focuses the mind of a parent . . . who wishes to travel internationally on a more important concern -- the need to support one's children first." 545 F. Supp. 2d 885, 890 (D. Minn. 2008).[19]

An examination of the Act's other required enforcement mechanisms adds further insight to the intended purpose and operation of the passport denial provisions at issue. These mechanisms can act as both a deterrent to prevent obligors from accruing an

---

[19] Federal courts have upheld 42 U.S.C. § 652(k) in the face of a number of constitutional challenges. *See, e.g.*, *Eunique*, 302 F.3d at 974; *Weinstein v. Albright*, 261 F.3d 127, 136-37 (2d Cir. 2001) ("[W]ith respect to the denial of passport applications for those situated like plaintiff, . . . the statute provides for timely notice and a meaningful opportunity to contest, and therefore comports with due process."); *Risenhoover*, 545 F. Supp.2d at 890 (rejecting the petitioner's argument that "42 U.S.C. § 652(k), on its face . . . amounts to an unconstitutional bill of attainder"); *In re Walker*, 276 B.R. 568, 571 (Bankr. W.D. Tex. 2002) ("There being a demonstrable basis for the exercise of Congress' legislative power, the law's validity survives constitutional challenge."). In each of these cases, the constitutionality of denying an individual's passport because of maintaining a child support arrearage exceeding the statutory threshold was upheld.

arrearage, as well as a motivation to promptly pay off an arrearage once the obligor is on notice of an impending consequence. Two examples include the procedures for placing liens on an obligor's personal and real property, and for authorizing the suspension of an obligor's professional, occupational, recreational, and driver's licenses. *See* 42 U.S.C. § 666(a). In a House Report, the Ways and Means Committee explained that one purpose of imposing liens on an obligor's personal or real property is to motivate him or her to prioritize prompt payment of overdue child support:

> [T]he knowledge that property will be seized and, if necessary, liquidated to obtain payment on past-due child support *is often enough to force noncustodial parents to locate the cash necessary to make payment on arrearages*.

H. R. Rep. No. 104-651, at ¶ 36 (1996) (Emphasis added).

Perhaps most similar to the denial of passports is the procedure for withholding, suspending, or restricting the use of an obligor's driver's and other licenses. *See* 42 U.S.C. § 666(a)(16).

> Placing licenses to these vital activities in jeopardy is an exceptionally effective way to ensure that noncustodial parents pay child support in a timely fashion. [ . . . ] Not surprisingly, the Committee on Ways and Means has received testimony, including documentary evidence, that States already using license suspension have enjoyed substantial increases in child support collections.

*Id.* at ¶ 37. Some of the Act's enforcement mechanisms may be effective, in part, because they prompt "noncustodial parents to locate the cash necessary to make payment on arrearages" and avoid a particular consequence. *See id.* at ¶ 35. Like the suspension of a driver's license under § 666(a)(16), the federal passport denial provisions have the effect

24

of placing in jeopardy a noncustodial parent's freedom and mobility. *See* 42 U.S.C. § 654(31). Thus, even if the passport denial provision can act to prevent an obligor from spending money unnecessarily on international travel, that does not preclude it from being effective as a way to motivate an obligor to avoid the restriction on his or her freedom.

### *iii. The circuit court's order infringed on the authority and duties of MCOCSE and the Secretary of State.*

Our examination of the plain language of the federal and state statutory enforcement schemes demonstrates that the passport denial statutes are mandatory. Under the federal scheme, § 652(k) states that "[i]f the Secretary receives a certification by a State agency . . . that an individual owes arrearages of child support in an amount exceeding $2,500, the Secretary *shall* transmit such certification to the Secretary of State for action . . . pursuant to paragraph (2)." 42 U.S.C. § 652(k)(1) (Emphasis added). Paragraph (2) provides, expressly, that when the Secretary of HHS transmits a certification pursuant to paragraph (1), "[t]he Secretary of State *shall* . . . refuse to issue a passport to such individual . . . ." *See* § 652(k)(2) (Emphasis added).

Consistent with the requirement for states to adopt certain child support enforcement procedures, COMAR 07.07.17.01(A) plainly states, "This chapter establishes the procedures of the Administration for identifying and reporting certain delinquent obligors of child support to the federal [OCSE] for the denial, revocation, or limitation of the obligor's passport." Moreover, the regulations provide that "[a]n obligor with support obligations over $2,500 is subject to denial, revocation, or limitation of the obligor's passport." COMAR 07.07.17.01(B). More specifically, MCOCSE's duty, as a "state

25

agency" referred to in 42 U.S.C. § 652(k), is also mandatory under the Maryland regulations. *See* COMAR 07.07.17.02(A) (Emphasis added) (stating that the agency "*shall* certify to OCSE an obligor whose support obligation arrearage exceeds $2,500"). Mr. Cohen was in arrears well above the $2,500 threshold. His circumstances, therefore, fell within the scope of MCOCSE's authority and duty to report the arrearage to the Secretary of HHS, whether or not the circuit court found that this enforcement measure would be effective in Mr. Cohen's situation.

The Maryland regulations provide two exceptions under which an obligor, who has failed to pay the child support arrearage in full, can avoid the denial of his or her passport application.[20] COMAR 07.07.17.06 requires that MCOCSE request that the OCSE "withdraw the passport denial" if: (1) the obligor has "[p]rovided documentation from [an] employer that a passport is required for employment purposes and that the Administration has been paid an agreed upon amount . . . ."; or (2) the "Secretary of the Department [of Human Services] or a designee . . . determines that the passport denial or revocation would result in undue hardship." *See* COMAR 07.07.17.06(B), (D). Clearly, there is no exception for noncustodial parents who have made a belated effort to comply with a child support order but maintain an arrearage above the $2,500 threshold. Further, no exception exists for noncustodial parents who can establish\h that all vacation expenses will be paid by

---

[20] Under § 666(a) -- governing the revocation of an obligor's licenses and the state's authority to place liens on an obligor's property -- the state may determine, pursuant to certain guidelines, that the use of one of these enforcement mechanisms "would not carry out the purposes of" Title 42 in a particular case. Unlike § 666(a), however, the federal passport denial statutes do not provide such an exception.

26

someone else. No exception exists for any balancing of the equities. Upon his receipt of the denial of his passport, Mr. Cohen had the right to challenge MCOCSE's certification through the proper administrative procedure. He did not, however, have the right to circumvent the administrative process.

Absent judicial intervention, the denial of Mr. Cohen's passport might have worked as an effective enforcement mechanism. For instance, Mr. Cohen's efforts to file a petition to have the block removed so that he could benefit from Mr. Sloan's gift of an all-expense paid vacation demonstrates that the restriction on his passport motivated Mr. Cohen to take action to avoid the restriction on his ability to travel internationally. As Mr. Sloan's affidavit indicated, he has paid for exotic vacations for his family on numerous occasions. Thus, if Mr. Cohen had been forced to miss this trip as a consequence of his child support arrearage, he might have made a more fervent effort to pay off the balance of overdue support in order to accept similar gifts in the future.

It is true that Mr. Cohen had the option to pay only the minimum amount towards his arrearage without the threat of being held in contempt. His recent payments towards the arrearage, however, did not shield him from all other consequences of his failure to support his children in the past.[21] The thrust of the passport denial statute's effectiveness is that it "focuses the mind of a parent . . . on . . . the need to support one's child first."

---

[21]     Mr. Cohen's payment of $3,000, although reducing slightly his overdue child support balance, did not bring Mr. Cohen into compliance with the court's most recent child support order. More importantly, however, the amount of child support that Mr. Cohen failed to pay since the original child support order was well above the statutory threshold.

*Risenhoover*, *supra*, 545 F. Supp. 2d at 890. Regardless of how a trip is funded, such a focus ultimately comes from the obligor's desire to travel internationally and, therefore, to have the restriction lifted.

For these reasons, the circuit court erred in granting Mr. Cohen's petition, ordering MCOCSE to release the block on his passport, and its retention of control over the passport after Mr. Cohen returned from Greece. His ability to obtain a passport fell within the authority of Maryland's Department of Human Services and the United States Secretary of State, under a statutory scheme enacted by Congress and adopted by the General Assembly of Maryland. In addition, the circuit court's control over the passport continues to interfere with the Secretary of State's exclusive authority over the restriction of Mr. Cohen's passport. Accordingly, we reverse the circuit court's order requiring MCOCSE to remove its hold on Mr. Cohen's passport and remand the case for further proceedings. The circuit court must turn over the passport at issue to the agency, and MCOCSE must re-certify Mr. Cohen to the Secretary of HHS and arrange to transfer the passport to the Secretary of State. The Secretary of State may decide, under his or her statutory authority, whether to revoke or restrict the passport.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

28